**ALLEN B. DUMONT LABORATORIES, Inc. et al. v. CARROLL et al.**
**Civ. A. No. 9359.**

United States District Court
E. D. Pennsylvania.

Oct. 26, 1949.

William A. Schnader, Earl G. Harrison, Philadelphia, Pa., attorneys for plaintiffs.

T. McKeen Chidsey, Atty. General of Pa., Abraham J. Levy, Special Deputy Atty. General of Pa., Harry F. Stambaugh, Special Counsel, Pa. Dept. of Justice, Harrisburgh, Pa., attorneys for defendants.

KIRKPATRICK, Chief Judge.

This is a civil action for a declaratory judgment brought by five corporations owned by or affiliated with national television networks and operating federally licensed television stations in Pennsylvania. The Court is asked to determine the validity of a regulation of the Pennsylvania State Board of Censors which requires that all motion picture film intended to be broadcast by television in Pennsylvania be submitted to the Board for censorship purposes.

The plaintiffs contend that the Regulation is invalid because it is in conflict with federal legislation in a field which Congress has fully occupied, thus excluding all regulation by the States. Alternatively, they assert that, even if Congress had not fully occupied the field, the Regulation imposes an undue burden upon interstate commerce and consequently is invalidated by the Commerce Clause itself, Const. art. 1, § 8, cl. 3.

The Commerce Clause effects, by its own force, an apportionment of the power to regulate interstate commerce, taking from the states the power to enact laws which unduly burden commerce and leaving in them a residuum of power to make laws which may affect but not unduly burden commerce. In the absence of congressional action, the courts determine whether a law of the state affecting commerce transgresses the limitations imposed by the Commerce Clause, and in a long series of decisions the Supreme Court has evolved principles which determine the boundaries of state power and has modified and recast them as changing conditions presented new problems.

However, the Commerce Clause confers upon Congress full power to regulate commerce, and the extent to which Congress will exercise the power so conferred is a matter lying entirely within its discretion. Thus, in any case in which Congress has acted there is superimposed upon the basic principles declared by the courts in cases arising directly under the Commerce Clause the question of how far Congress in taking the subject in hand intended to exclude regulation by the states. "Congress has undoubted power to redefine the distribution of power over interstate commerce. It may either permit the states to regulate the commerce in a manner which would otherwise not be permissible * * * or exclude state regulation even of matters of peculiarly local concern which nevertheless affect interstate commerce." Southern Pacific Co. v. State of Arizona ex rel. Sullivan, 325 U.S. 761, 769, 65 S.Ct. 1515, 1520, 89 L.Ed. 1915. There is no room to argue that this statement means less than it says. Congress may, therefore, expressly prohibit all state legislation which affects interstate commerce in any given field even though such legislation would not unduly burden commerce and would have been entirely within the residuum of power left to the state by the Commerce Clause. It may also impliedly prohibit all state legislation in a field of interstate commerce, and it does so when it completely occupies any given field.

In the field of communication by television, Congress has acted. The Communications Act of 1934, 47 U.S.C.A. § 151 et seq., establishes a comprehensive scheme for the regulation on a national scale of virtually all communication facilities, and television is unquestionably within its scope. We are, therefore, not immediately concerned with the question whether censor-

ship of film used in television is a power which the Commerce Clause itself, unaided by federal legislation, left the state free to exercise.

■ There are, of course, many instances of congressional regulation which Congress, in the exercise of its discretion, intended to be less than complete. "* * * it often happens that there is only a partial exercise of that power by the federal government. In such cases the state may legislate freely upon those phases of the commerce which are left unregulated by the nation", Cloverleaf Butter Co. v. Patterson, 315 U.S. 148, 155, 786, 62 S.Ct. 491, 495, 86 L.Ed. 754, and, where there has been only a partial exercise of the power to regulate by Congress "* * * it must be clear that the federal provisions are inconsistent with those of the state to justify the thwarting of state regulation." The defendants contend that this is such a situation and we are thus brought to the question which lies at the threshold of the present case and which may be stated as follows:

Did Congress in enacting the Radio Act of 1927, 44 Stat. 1162, and the Communications Act of 1934, intend to occupy the entire field of communication by radio and television and to exclude the power of the states to regulate every phase of it, including censorship? More specifically, when Congress, in Section 326* of the Communications Act of 1934, 47 U.S.C.A. § 326, denied the Federal Communications Commission the power of censorship, did it in so doing manifest an intent to leave the states free to censor programs, or does this Section, taken in connection with the scope and purpose of the Act, amount to a prohibition of all censorship, both by its own agency and by any other authority national or state?

■ I am satisfied that in the field of television there has been a plenary exercise by Congress of the power to regulate

and a complete occupation of the field, including censorship. Under the comprehensive scheme of regulation established by the Communications Act, the Commission can exercise effective control over the content of programs, and the fact that this scheme eliminates one particular method of control, namely, censorship in advance of showing, in favor of a less drastic one does not mean that that field is left untouched. As the Court said in National Broadcasting Co., Inc. v. United States, 319 U.S. 190, 216, 63 S.Ct. 997, 1009, 87 L.Ed. 1344, the Act "puts upon the Commission the burden of determining the composition of that traffic", and Congress has empowered the Commission to discharge its duty in this regard, by at least five provisions of the Act, namely, (1) the licensing requirements of the Act, providing for an inquiry by the Commission into the character of an applicant for a station license, (2) the requirement that the same factors are to be considered by the Commission in passing upon applications for the renewal of licenses, Sec. 307(d), (3) the prohibition of Sections 309(b) (2) and 310(b) against the assignment or other transfer of a license without the written consent of the Commission given after securing full information, (4) the provision contained in Section 303(m) (1) (D) of the Act, giving the Commission authority to suspend the license of any operator upon proof sufficient to satisfy the Commission that the licensee "has transmitted * * * communications containing profane or obscene words, language, or meaning * * *" and (5) Section 1464 of Title 18 U.S.C.A., originally part of Section 326 of the Act, providing that "Whoever utters any obscene, indecent, or profane language by means of radio communication shall be fined not more than $10,000 or imprisoned not more than two years, or both."

It seems to me perfectly plain that Congress was definitely concerned with the question of possible misuse of the facilities

---

* "Nothing in this chapter shall be understood or construed to give the Commission the power of censorship over the radio communications or signals transmitted by any radio station, and no regulation or condition shall be promulgated or fixed by the Commission which shall interfere with the right of free speech by means of radio communication."

of radio and television by broadcasting matter harmful to the public interest, that it intended to deal with that problem fully and that it did so, choosing a method which avoided the danger, always present in a system of censorship, of whittling away the constitutional guarantees of freedom of speech and press.

The conclusion reached upon this point is decisive of the case and it follows that the Regulation of the Board of Censors is invalid because it impinges upon a field of interstate commerce which Congress has pre-empted and is inconsistent with the statute and with the national policy adopted by Congress for the regulation and control of radio and television.

■ I think, however, that I should also state my conclusion that the Regulation is invalid because it would constitute an undue and unreasonable burden on interstate commerce in television broadcasting. Having found that Congress under the authorization of the Commerce Clause has fully occupied the field, it seems unnecessary to enter into a discussion of the principles which would govern had it not done so, but in order that the entire controversy together with the views of this Court may be fully before the appellate court, I state the conclusion.

Judgment may be entered in accordance with the foregoing.