[Civ. No. 18222.   First Dist., Div. Two.   June 29, 1960.]

STANDARD RADIO AND TELEVISION COMPANY (a Corporation), Appellant, v. THE CHRONICLE PUBLISHING COMPANY (a Corporation) et al., Respondents.

Rea, Frasse, Anastasi, Clark & Chapman and Burnett, Burnett & Somers for Appellant.

Moses Lasky, Brobeck, Phleger & Harrison, Cooper, White & Cooper, Loeb & Loeb, Ruffo & Chadwick, Beilenson, Meyer, Rosenfeld & Susman, Rankin, Oneal, Luckhardt, Center & Hall, Mitchell, Silberberg & Knupp, Maklin Fleming and Beresford & Webster for Respondents.

STONE, J. pro tem.*—This is an appeal from a judgment entered pursuant to an order sustaining demurrer without leave to amend. Plaintiff is a corporation licensed by the Federal Communications Commission to render television broadcasting service to the San Jose area and it is the only licensed television station in that locality. There are two sets of defendants, one is composed of television broadcasters, hereinafter referred to as defendant broadcasters, the other of motion picture film producers and distributors, referred to as defendant distributors. The defendant broadcasters con-

---

*Assigned by Chairman of Judicial Council.

sist of a corporation licensed to operate television station KRON in San Francisco, its officers and directors, and a corporation licensed to operate television station KPIX in San Francisco, its officers and directors. Television station KRON is a member of the National Broadcasting Company chain and station KPIX is affiliated with the Columbia Broadcasting System.

The gist of plaintiff's complaint is that defendant broadcasters have insisted that their contracts with defendant distributors contain an "exclusivity clause" binding distributors not to sell film to any television station with a transmitter within a 60-mile radius of the transmitter sites of defendant broadcasters. Since plaintiff's transmitter is located within said 60-mile radius defendant distributors have refused to sell desirable film to plaintiff even though "plaintiff is able, ready and willing to pay full and fair price therefor." This plaintiff alleges has caused injury to its business. It is also alleged that this discrimination deprives the viewing public of desirable pictures on plaintiff's local channel or forces viewers, as an alternative, to endure an inferior "signal" from defendants' stations. Plaintiff prays that defendants be enjoined from enforcing the exclusivity clause in contracts between defendant broadcasters and defendant distributors and that the exclusivity clause be declared void as contrary to public policy. Plaintiff also prays for damages, actual and punitive. The action was brought pursuant to Business and Professions Code, sections 16700 et seq. (Cal. Anti-Trust Statute, Codification of the Cartwright Act).

Defendants' principal ground of demurrer is that the complaint presents a federal question and the state courts have no jurisdiction of the subject matter. Defendants also urge that plaintiff has failed to exhaust its administrative remedies. The trial court sustained the demurrer without leave to amend on the ground that a federal question is presented, thus depriving the state court of jurisdiction of the subject matter and for the additional reason that plaintiff has not exhausted available administrative remedies before the Federal Communications Commission. A judgment was entered pursuant to the order sustaining demurrer without leave to amend and this appeal followed.

Federal control of television broadcasting is embodied in the Communications Act of 1934, 48 Statutes 1082, title 47, U.S.C., as amended, and we must look to that act and the

decisions construing its provisions to determine the scope and extent of such control (*Federal Communications Com. v. Pottsville Broadcasting Co.*, 309 U.S. 134, 137 [60 S.Ct. 437, 84 L.Ed. 656]). The act does not specifically refer to television and subchapter III of title 47, U.S.C., which subchapter, together with the cases construing it govern in this case, is entitled "Special Provisions Relating to Radio." However, the provisions of the act relating to radio include television since section 153(b) of title 47 entitled "Definitions" provides:

"(b) 'Radio communication' or 'communication by radio' means the transmission by radio of writing, signs, signals, pictures, and sounds of all kinds, including all instrumentalities, facilities, apparatus, and services (among other things, the receipt, forwarding, and delivery of communications) incidental to such transmission."

The federal courts have held television to be a form of radio within the meaning of title 47. In *Allen B. Dumont Laboratories* v. *Carroll*, 184 F.2d 153 (cer. den. 340 U.S. 929 [71 S.Ct. 490, 95 L.Ed. 670]), the court said at page 155: ". . . The Communications Act of 1934 applies to every phase of television . . ." Relatively speaking, television is of recent development, hence there is a paucity of decisions bearing directly upon the industry and its problems. Therefore, we must look to decisions concerning radio broadcasting, especially those construing U.S.C. title 47, for authority and guidance in considering the scope of federal control of television. Before discussing the extent or the scope of federal control of television from the aspect of constitutional law, it is necessary that we examine the nature of such control. It is not limited to the technical aspects of broadcasting or the transmission of electrical impulses which might interfere with interstate commerce or military signal transmission. The Supreme Court of the United States has made this clear by the following language in *National Broadcasting Co.* v. *United States*, 319 U.S. 190, at page 215 [63 S.Ct. 997, 87 L.Ed. 1344]:

"The Act itself establishes that the Commission's powers are not limited to the engineering and technical aspects of regulation of radio communication. Yet we are asked to regard the Commission as a kind of traffic officer, policing the wave lengths to prevent stations from interfering with each other. But the Act does not restrict the Commission merely to supervision of the traffic. It puts upon the Commission the burden of determining the composition of that traffic . . ."

Defendants contend that the federal government has completely occupied the field and cite the following excerpt from the Dumont case, *supra,* page 155: ". . . The language employed is so all inclusive as to leave no doubt but that it was the intention of Congress to occupy the television broadcasting field in its entirety . . ." Yet, a reading of the case does not justify the broad interpretation which defendants have given it since the specific holding is that states cannot censor films broadcast by television stations. Federal regulation of television is not unlimited. For example, the Federal Communications Act does not confer federal control over the purely private internal business affairs of a station even though no station can do business unless it is licensed pursuant to the F.C.A. The United States Supreme Court so held in *Federal Communications Com.* v. *Sanders Bros. Radio Station,* 309 U.S. 470, by the following language at page 475 [60 S.Ct. 693, 84 L.Ed. 869]: "But the Act does not essay to regulate the business of the licensee. The Commission is given no supervisory control of the programs, of business management or of policy . . ." What, then, determines or defines the extent or scope of the area of federal control of television broadcasting? The principal criterion is contained in the answer to the question, "does it affect the public interest?" This principle or test is stated in the preface to title 47, U.S.C., section 303, which delineates the powers and duties of the Federal Communications Commission. The United States Supreme Court has lent its authority to this standard or test in several opinions which are epitomized by the following excerpt from *National Broadcasting Co.* v. *United States, supra,* at page 216, as follows:

". . . The touchstone provided by Congress was the 'public interest, convenience, or necessity,' a criterion which 'is as concrete as the complicated factors for judgment in such a field of delegated authority permit.' *Federal Communications Com.* v. *Pottsville Broadcasting Co.,* 309 U.S. 134, 138 [60 S.Ct. 437, 84 L.Ed. 656]. 'This criterion is not to be interpreted as setting up a standard so indefinite as to confer an unlimited power. Compare *New York Central Securities Corp.* v. *United States,* 287 U.S. 12, 24 [53 S.Ct. 45, 77 L.Ed. 138]. The requirement is to be interpreted by its context, by the nature of radio transmission and reception, by the scope, character and quality of services . . .' *Federal Radio Comm'n* v.

*Nelson Bros. Co.*, 289 U.S. 266, 285 [53 S.Ct. 627, 77 L.Ed. 1166, 89 A.L.R. 406].

"The 'public interest' to be served under the Communications Act is thus the interest of the listening public in 'the larger and more effective use of radio,' § 303 (g). The facilities of radio are limited and therefore precious; they cannot be left to wasteful use without detriment to the public interest. 'An important element of public interest and convenience affecting the issue of a license is the ability of the licensee to render the best practicable service to the community reached by his broadcasts.' *Federal Communications Comm'n* v. *Sanders Bros. Radio Station,* 309 U.S. 470, 475 [60 S.Ct. 693, 84 L.Ed. 869] . . ."

Plaintiff contends that the questions presented by this case involve private business controversies within the rationale of the Sanders case. Its complaint belies its contention since plaintiff alleges as follows:

"That neither Station KRON or KPIX send City Grade Service pictures throughout the principal part of the territory covered within the City Grade Service signal of Station KNTV as hereinabove described; that there are living and residing within the said area in the County of Santa Clara, more than 300,000 people and that the majority of homes within said area have television receiving sets; that Station KNTV is the only television station whose signal gives City Grade Service within the greatest part of the area described in Paragraph IV hereof, and that by virtue of the said acts and the said course of conduct of defendants, as aforesaid, the people of San Jose and the surrounding area are given no option if they wish to watch programs containing films distributed and licensed by the defendants hereinabove alleged to be in that business, except to endure an inferior grade of signal reception from Stations KRON and KPIX."

In substance, this allegation accuses defendant broadcasters of evading the principles of the F.C.A. and specifically of violating the provision which Mr. Justice Frankfurter has characterized as the touchstone provided by Congress, namely, "public convenience, interest or necessity" (*Federal Communications Com.* v. *Pottsville Broadcasting Co.,* 309 U.S. 134, 137 [60 S.Ct. 437, 84 L.Ed. 656]; 47 U.S.C.A. § 303). Plaintiff charges a violation of the primary condition upon which the licenses of defendant television stations were granted (47 U.S.C. § 307(a); *National Broadcasting Co.* v. *United*

*States, supra; United States* v. *R.C.A.,* 358 U.S. 334, 351 [79 S.Ct. 457, 3 L.Ed.2d 354]). Thus, by alleging that the viewing public within the city grade signal and reception area allotted to plaintiff television station is being forced by the deliberate and concerted action of the defendants to endure either inferior reception (signal) from the defendant stations or inferior films (programs) from plaintiff station, a case has been stated within the scope of the F.C.A. And, if true, the acts of defendants are contrary to public policy as alleged by plaintiff in its complaint.

The practice about which plaintiff complains has been implemented in the television industry by a contract clause denominated the ''exclusivity clause.'' The use of this type clause in contracts for the purchase of film by television stations has been practiced to some extent throughout the industry. The nationwide aspect of the problem is evidenced by the fact that plaintiff intervened or filed a petition in support of an application for a regulation prohibiting the use of exclusivity clauses. The application to the Federal Communications Commission was initiated by New Hampshire station, WMUR-TV. This action by the New Hampshire station sought a regulation forbidding the use of the ''exclusivity clause'' by any television station in the United States. The facts related in plaintiff's petition and affidavit in intervention before the F.C.C. are repeated in substance in the complaint in this action. Thus, by recognizing the industrywide and nationwide scope of the crucial question involved here, plaintiff has negated its argument to this court that the question is purely private or local in nature. It is true as plaintiff argues that it has a private interest in the outcome of this litigation which is vital. Yet, the public too has an interest in the subject matter of the litigation and that public interest is one of the fundamental reasons for federal control of television broadcasting. In this situation where there is a conflict between private and public interests or rights, the language of the United States Supreme Court in *Garner* v. *Teamsters Union,* 346 U.S. 485 [74 S.Ct. 161, 98 L.Ed. 228], is applicable. At page 500, the court said: ''Whatever purpose a classification of rights as public or private may serve, it is too unsettled and ambiguous to introduce into constitutional law as a dividing line between federal and state power or jurisdiction ...''

The industrywide aspect of the exclusivity clause points up a major reason why this is a proper case for federal juris-

diction. Were the California court to assume jurisdiction and decide the legality of the exclusivity clause in television contracts, a conflict between forums could well develop. The court of another state, or a federal court, or the Federal Communications Commission might well come to a different conclusion than that reached by a court of this state. Defendant broadcasters are network stations and engaged in interstate commerce (*Allen B. Dumont Laboratories* v. *Carroll, supra*). Yet, if a California court were to determine the legality of the exclusivity clause, the decision would be applicable to all television stations within the state including network stations. We doubt that plaintiff would contend as a general proposition that the State of California could regulate the television industry in the face of the F.C.A. In *Allen B. Dumont Laboratories* v. *Carroll, supra,* the court concluded: ". . . We think it is clear that Congress has occupied fully the field of television regulation and that that field is no longer open to the States. Congress possessed the constitutional authority to effect this result. *Hines* v. *Davidowitz,* 312 U.S. 52, 74 [61 S.Ct. 399, 85 L.Ed. 581] . . ." The state may not do indirectly by judicial decree that which it may not do directly by legislation. (*Garner* v. *Teamsters Union, supra,* p. 491; see also dissenting opinion of Mr. Justice Traynor in *Garmon* v. *San Diego Bldg. Trades Council,* 49 Cal.2d 618 [320 P.2d 473].)

The defendants also argue that plaintiff must exhaust its administrative remedies before applying to any court for redress. Specifically, they contend that plaintiff must first apply to the Federal Communications Commission for a ruling on the exclusivity clause in contracts between television broadcasters and film producers and distributors. The trial court agreed with defendants and stated in its opinion that plaintiff had not applied to the F.C.C. for relief nor exhausted its administrative remedies. In *United States* v. *R.C.A.,* 358 U.S. 334 [79 S.Ct. 457, 3 L.Ed.2d 354], the United States Supreme Court in discussing the question of jurisdiction of the F.C.C. in relation to federal anti-trust laws, said at page 346: "Thus, the legislative history of the Act reveals that the Commission was not given the power to decide antitrust issues as such, and that Commission action was not intended to prevent enforcement of the antitrust laws in federal courts." In light of this language, it would appear that plaintiff could petition the F.C.C. requesting a regulation controlling or eliminating

exclusivity clauses, just as did the New Hampshire station, but the fact that it did not do so would not preclude plaintiff from seeking relief in a federal court pursuant to federal anti-trust laws. It seems equally clear from *United States* v. *R.C.A.* that if monopolistic and unfair trade practices are adopted by television stations licensed by the federal government, the controversy falls within federal and not state jurisdiction. Whether appellant must seek relief through administrative channels before addressing itself to the federal courts is a question of federal jurisdiction and procedure and not a matter for decision by this court.

The judgment is affirmed.

Kaufman, P. J., and Draper, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 24, 1960.