[Civ. No. 49806. Second Dist., Div. Two. Oct. 3, 1977.]

JOHN L. SCHROEDER, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE LOS CERRITOS JUDICIAL
DISTRICT OF LOS ANGELES COUNTY,
Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

842

## COUNSEL

Frederick J. Lawson for Plaintiff and Appellant.

J. Kenneth Brown, City Attorney, Ebben & Brown, Ebben, Brown, Winfield & Canzoneri and Thomas F. Winfield III for Defendant and Respondent.

John K. Van de Kamp, District Attorney, and Donald R. Wagner, Deputy District Attorney, for Real Party in Interest and Respondent.

## OPINION

**FLEMING, Acting P. J.**—Appeal from a judgment of the superior court denying a peremptory writ of prohibition directed against the Los Cerritos Municipal Court to enjoin prosecution of a municipal zoning ordinance violation. The ordinance in question prohibits in the RS (single family residential) zones any radio or television transmitting or receiving antenna over 40 feet in height from the ground or 15 feet from the roof, whichever is less. Appellant is an FCC licensed amateur radio station operator being prosecuted for having constructed at his home in the RS zone a 70 foot vertical antenna consisting of a crank-up tower encased in concrete. The ordinance in question provides:

"(21) Radio and Television Antennas: Radio or television transmission or receiving facilities shall conform to the following provisions:

"(a) The facilities shall not exceed forty feet in height from ground level or fifteen feet above the roof height, whichever is least, unless permitted by the planning commission, . . ." The planning commission denied him a permit, stating that his antenna would be out of character with the aesthetics of the neighborhood, would be a visual and aesthetic blight, and would operate contrary to the performance standards of the City of Cerritos relative to electrical interference. Appellant testified that at the 40-foot height his antenna could communicate as far as New

York or Hawaii, but that at the extended height it could reach anywhere in the world. He also testified that electrical interference would in fact be 4,000 times stronger at 40 feet than at the extended height of 70 feet. Appellant appeals the court's denial of a writ of prohibition, contending (1) the ordinance is void because federal regulation of radio transmission under the 1934 Communications Act (47 U.S.C. § 151 et seq.; 47 C.F.R. § 97 et seq.) has preempted the field of regulation of radio transmission; (2) the ordinance is an impermissible restriction or a prior restraint on free speech; (3) the ordinance is unreasonable and arbitrary and an impermissible exercise of the police power.

█ 1. On preemption, those authorities directly in point dealing with regulation of antenna height hold that local land use regulation of antenna height is permissible and is not precluded by FCC regulation of radio transmission. (See *Kroeger* v. *Stahl* (3d Cir. 1957) 248 F.2d 121, permitting an absolute ban on FCC licensed mobile radio stations in residential zones; *Presnell* v. *Leslie* (1957) 3 N.Y.2d 384 [165 N.Y.S.2d 488, 144 N.E.2d 381], upholding the zoning board's denial of a permit to an FCC licensed amateur radio station operator to construct a 40-foot rotary beam antenna on his home premises; Note, 44 Cornell L.Q. 94, 102 (1958); Note, *State Regulation of Radio and Television* (1959) 73 Harv.L.Rev. 386, 395.) "[L]ocal interest in these towers is maximized because they affect residential property values, aesthetic characteristics, and the physical safety of members of the community." (Note, *supra,* 73 Harv.L.Rev. at p. 395.) Also, an opinion of the California Attorney General concludes that pursuant to its police powers, a chartered city may enact reasonable regulations as to height, location, and method of installation of amateur radio antennas. (Opn. No. 71-79, 54 Ops.Cal. Atty.Gen. 102 (1971).) The request for that opinion was apparently precipitated by an accident in which 1 man was killed and 4 others were injured when they lost control of a 65-foot antenna they were attempting to install on a residential roof and allowed it to strike a high power line. The justification for permitting local regulation of antenna height is that antennas may be a safety hazard, may decrease property values, and may constitute "eyesores." (See Note, *supra,* 44 Cornell L.Q. at p. 102.)

█ In a preemption case the fundamental inquiry is whether local legislation will conflict with national policy; if the activity is of predominantly local interest then state action may be permissible, but if a uniform national rule is necessary then federal preemption will be implied. (*California* v. *Zook* (1949) 336 U.S. 725, 728 [93 L.Ed. 1005,

1008, 69 S.Ct. 841]; *R.E. Spriggs Co.* v. *Adolph Coors Co.* (1974) 37 Cal.App.3d 653, 658 [112 Cal.Rptr. 585].) ■ The fundamental rationale for the Communications Act of 1934 (47 U.S.C. § 151 et seq.) is based on the fact that the number of available radio frequencies is finite, and therefore, Congress must exercise its power over interstate commerce to allocate available frequencies and control their use. *Commission* v. *Sanders Radio Station* (1940) 309 U.S. 470, 474 [84 L.Ed. 869, 873-874, 60 S.Ct. 693].) Unquestionably, federal legislation has preempted local regulation of radio transmission, including assignment of frequencies, interference phenomena, and the content of broadcast material. (See, e.g., *Allen B. Dumont Laboratories* v. *Carroll* (E.D. Pa. 1949) 86 F.Supp. 813, affd. 184 F.2d 153, cert. den., 340 U.S. 929 [95 L.Ed. 670, 71 S.Ct. 490]; *U. S.* v. *Southwestern Cable Co.* (1968) 392 U.S. 157 [20 L.Ed.2d 1001, 88 S.Ct. 1994]; *Standard Radio & Television Co.* v. *Chronicle Pub. Co.* (1960) 182 Cal.App.2d 293 [6 Cal.Rptr. 246].) ■ As stated, existing authority regarding regulation of antenna height has found sufficient local interest to sustain local regulation. Also, the federal regulation of amateur radio operators (47 C.F.R. § 97 et seq.) reveals no detailed regulation of antenna height, but rather one blanket limitation on height to 200 feet (47 C.F.R. § 97.45), plus extensive height regulation of antennas in the vicinity of airports. The FCC has not exhibited concern over antenna height where airport safety is not involved. By contrast, many detailed regulations govern the assignment of frequencies and the prevention of interference phenomena (see e.g., 47 C.F.R. §§ 97.73, 97.131, 97.133), and there can be no doubt that federal regulation has preempted control in those areas.

Appellant's contention that the 1934 act foreclosed all local regulation of radio communication is simply incorrect. Each case turns on whether local regulation has invaded the exclusively national sphere under the principles set forth above, or whether it involves a matter of local concern that does not require a uniform rule. In addition to authorities such as *Kroeger* v. *Stahl, supra,* (3d Cir. 1957) 248 F.2d 121, which uphold land use regulation of antenna height, local regulation of other aspects of radio communication has been sustained. For example, local authorities may regulate franchising and rate making for the cable television industry, provided the regulation is reasonable (*Greater Fremont Inc.* v. *City of Fremont* (N.D. Ohio 1968) 302 F.Supp. 652, 660); and they may regulate professional advertising on a local radio station (*Head* v. *New Mexico Board* (1963) 374 U.S. 424, 429-431 [10 L.Ed.2d 983, 988-989, 83 S.Ct. 1759]).

Appellant asserts that the only reasons given by the planning commission in denying him a permit were aesthetic considerations and the problem of electrical interference, and that the FCC has preempted the latter area. His assertion that the FCC's detailed regulation of interference phenomena has preempted that aspect of regulation of radio transmission is correct, and this ground does not constitute a valid reason to prevent him building an antenna more than 40 feet high. But it is irrelevant to the reasonableness of an ordinance that the legislators had improper motives or purposes (*McCarthy* v. *City of Manhattan Beach* (1953) 41 Cal.2d 879, 894 [264 P.2d 932]), and it is even less relevant that a member of the planning commission advanced an impermissible ground in denying a permit. The question is whether there is any rational justification for the ordinance, and because valid considerations to support local regulation of antenna height exist, the ordinance is not preempted by federal regulation by reason of the planning commission's misapprehension of its powers.[1]

■ 2. We turn to the question whether the ordinance is an invalid regulation of appellant's freedom of speech and expression under the First and Fourteenth Amendments. ■ The well-established rule is that reasonable, narrowly drawn statutes may regulate the time, place, and manner of expression, but that blanket prohibitions of expression are invalid (*Dillon* v. *Municipal Court* (1971) 4 Cal.3d 860, 867-869 [94 Cal.Rptr. 777, 484 P.2d 945]), as are overbroad statutes or those without clear cut standards (*Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 305 [138 Cal.Rptr. 53, 562 P.2d 1302]; *Remer* v. *City of El Cajon* (1975) 52 Cal.App.3d 441 [125 Cal.Rptr. 116]; *Dulaney* v. *Municipal Court* (1974) 11 Cal.3d 77 [112 Cal.Rptr. 777, 520 P.2d 1]; *Van Nuys Pub. Co.* v. *City of Thousand Oaks* (1971) 5 Cal.3d 817 [97 Cal.Rptr. 777, 489 P.2d 809]). ■ Judged by these standards the instant ordinance is constitutional. It does not restrict amateur radio transmission throughout the city, but only in the residential zone; it does not prohibit all transmission even there, for although appellant cannot transmit throughout the globe he can apparently communicate within a radius of 2,500 miles.

---

[1]Appellant, as stated, testified that interference would become less with increasing antenna height, and he therefore asserts that the regulation cannot be justified on any rational basis. We agree that as a regulation of interference phenomena the ordinance would be invalid; but there are other justifications for limiting antenna height, such as safety and aesthetic factors. Problems of interference generated by the lower height of the antenna must be resolved within the context of the federal regulations cited in the text.

Appellant contends the ordinance is invalid because it prescribes no standards whereby he can obtain a variance from the city council allowing construction of an antenna higher than 40 feet. He has cited no cases, nor are we aware of any, requiring that a variance be provided when the basic ordinance is reasonable in its effect. In *Dillon,* the court struck down an ordinance requiring a permit for a parade and prescribing no standards whereby a permit could be obtained; there; the form of expression under scrutiny was absolutely prohibited, subject to the arbitrary discretion of local officials. Here, by contrast, appellant can construct an antenna up to 40 feet high and can communicate throughout a wide area. Such an ordinance is not unconstitutional on its face as a restraint on freedom of speech. Appellant's cited cases on this point all involve blanket prohibitions of forms of expression; posting notices on utility poles, in *Dulaney;* distributing handbills and circulars, in *Van Nuys Publishing;* setting up newsracks on the streets, in *Remer.*

■ 3. In support of his argument that the ordinance is an invalid exercise of the police power, appellant contends the only real justification for the ordinance is aesthetic, which is an insufficient basis to deprive him of the use of his property (citing *Varney and Green* v. *Williams* (1909) 155 Cal. 318, 320 [100 P. 867]). ■ In regulating land use, municipalities have broad discretion to prescribe zoning restrictions, which will be stricken only if clearly arbitrary and unreasonable and without substantial relation to public health, safety, or morals. (*Euclid* v. *Ambler Realty Co.* (1926) 272 U.S. 365, 388-389 [71 L.Ed. 303, 310-311, 47 S.Ct. 114, 54 A.L.R. 1016]; *Nectow* v. *City of Cambridge* (1928) 277 U.S. 183 [72 L.Ed. 842, 48 S.Ct. 447]; *Village of Belle Terre* v. *Boraas* (1974) 416 U.S. 1 [39 L.Ed.2d 797, 94 S.Ct. 1536]; *Young* v. *American Mini Theatres* (1976) 427 U.S. 50, 62-63 [49 L.Ed.2d 310, 321-322, 96 S.Ct. 2440]; *Moore* v. *East Cleveland* (1977) 431 U.S. 494 [52 L.Ed.2d 531, 536-537, 97 S.Ct. 1932].) Economic and aesthetic grounds are permissible considerations for exercise of the police power. (*Burk* v. *Municipal Court* (1964) 229 Cal.App.2d 696, 701-702 [40 Cal.Rptr. 425] (sustaining prohibition of commercial signs in residential area).) Even in *Varney and Green, supra,* the 1909 case which holds that artistic taste provides an insufficient basis for land use regulation, the court stated that the height of a billboard might be regulated for safety reasons, and that the manner of erecting and using billboards might also be regulated, even though their erection could not be entirely prohibited. (155 Cal. at p. 321.) ■ Similarly here, possible safety considerations, economic factors, and aesthetic factors all support local regulation of the height of antennas and manner of their installation. Appellant contends, however,

that since the planning commission did not mention either safety or economic factors in its letter of rejection, its only justification for refusing him a permit was aesthetic, and that regulation of land use may not be based solely on that reason. Given that the instant ordinance is reasonably justifiable on its face, the burden rests on appellant to show the ordinance has been unfairly applied to him. The letter of denial is insufficient evidence to compel reversal. The trial court looked at pictures of the antenna and the surrounding vicinity and concluded that the commission had acted properly. Absent some solid evidence of the safety of the antenna and its neutral impact on local property values, we cannot conclude that application of the ordinance was unreasonable or arbitrary. Appellant relies on the following evidence: the commission's original issuance of a permit, which was then quickly revoked; appellant's assertion that the antenna is safe; the letter of the planning commission which does not mention safety. Even if we were to accept appellant's premise that aesthetic considerations alone may not justify land use regulation—which we do not—appellant has not sufficiently shown that other considerations do not support application of the ordinance to him.

 Courts have recognized that economic and aesthetic considerations may be closely interwoven, and they have granted broad discretion to local authorities to regulate residential land use in order to stabilize economic and social aspects of a neighborhood and to promote aesthetic considerations, family environments, and basic residential character. (See *Sechrist* v. *Municipal Court* (1976) 64 Cal.App.3d 737, 746-747 [134 Cal.Rptr. 733], permitting an ordinance banning junk storage on premises in an R-1 zone.) Commercial signs in residential areas may be banned. (*Burk* v. *Municipal Court, supra,* 229 Cal.App.2d 696.) A municipality may limit dwelling occupancy to family units of related individuals. (*Village of Belle Terre* v. *Boraas,* (1974) 416 U.S. 1 [39 L.Ed.2d 797, 94 S.Ct. 1536]; *Moore* v. *East Cleveland, supra,* 431 U.S. 494.) Since restriction of antenna height to 40 feet is a less drastic regulation than any of these, we think such restriction neither unduly burdensome nor unreasonable.

The judgment of the trial court is affirmed.

Compton, J., and Beach, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 1, 1977.