[No. A062643. First Dist., Div. Three. Jan. 9, 1995.]

BIG CREEK LUMBER COMPANY, INC., Plaintiff and Respondent, v. COUNTY OF SAN MATEO et al., Defendants and Appellants.

## COUNSEL

Thomas F. Casey III, County Counsel, and Michael P. Murphy, Deputy County Counsel, for Defendants and Appellants.

Ronald A. Zumbrun, Robin L. Rivett, Jennifer M. Deming and Jim Burling for Plaintiff and Respondent.

## OPINION

**CORRIGAN, J.**—This case is one of first impression concerning statutory preemption. With its passage of the Z'berg-Nejedly Forest Practice Act of

1973 (hereafter the FPA),[1] the Legislature established a comprehensive statutory scheme regulating the *conduct* of timber operations. At issue here is whether the FPA preempts a county's attempt to control, by zoning ordinance, the *location* of commercial timber harvesting. We conclude the county's action was not preempted and, further, that it was a reasonable exercise of the zoning authority. Accordingly, we reverse.

## FACTS AND PROCEDURAL BACKGROUND

The FPA was passed in 1973. Its purpose was to "create and maintain an effective and comprehensive system of regulation and use of all timberlands . . . ." (Pub. Resources Code, § 4513.) The California Timberland Productivity Act of 1982 (hereafter the TPA)[2] requires cities and counties to zone described timberlands as "timberland production zones," or TPZ's.[3] The TPA is intended to protect properly conducted timber operations from being prohibited or restricted due to conflict or apparent conflict with surrounding land uses.[4] The Legislature directed that this policy is to be implemented "by including all qualifying timberland in timberland production zones."[5] San Mateo County (hereafter the County) contains a number of areas that are zoned to allow timber harvesting. The conduct of timber operations in all of these areas is regulated by the FPA. In accordance with the TPA, the County designated a number of TPZ's.[6] The County had also designated other districts[7] in which timber harvesting was permitted as one of a wide variety of allowed uses. It is the regulation of these latter districts that is at issue here.

On April 14, 1992, the County Board of Supervisors (hereafter the Board) considered the potential conflict between timber harvesting operations and residential land use, then enacted amendments to its zoning ordinance.[8] The amendments prohibited, with certain exceptions, commercial timber harvesting in designated rural areas of the County "within 1,000 feet of any legal dwelling in existence on June 18, 1991 . . . ." The Ordinance did not apply to any TPZ's. It only imposed the restrictions in districts that had not been so zoned. The buffer zone's creation made about 13 percent of timber areas outside the TPZ's unavailable for timber operations.

---

[1]Codified as Public Resources Code sections 4511-4628.

[2]Government Code sections 51100-51155.

[3]Government Code sections 51104, subdivision (g), 51112, 51114.

[4]Government Code sections 51101, subdivision (b), 51102, subdivision (b).

[5]Government Code section 51103.

[6]As used in county general plans, the designation " 'timberland preserve zone' " is synonymous with " 'timberland production zone.' " (Gov. Code, § 51104, subd. (g).)

[7]These districts were zoned resource management (RM), resource management/coastal zone, and planned agricultural district.

[8]San Mateo County Ordinance No. 3381 (hereafter the Ordinance).

In taking its action, the Board articulated several findings, including the following: "The Board of Supervisors finds that timber harvesting operations cause a number of conflicts with existing residential uses. These conflicts predominantly involve complaints about noise associated with adjacent timber harvesting operations, but also include complaints about potential windthrow, wildfire and erosion. Timber harvesting in the vicinity of residential structures also impact [sic] the scenic and aesthetic qualities associated with those structures. Neither the Forest Practices [sic] Act nor regulations adopted thereunder establish a buffer zone between residential uses and timber harvesting."

Big Creek Lumber Company, Inc. (hereafter Big Creek), a corporation operating on lands subject to the Ordinance, sought, and the trial court granted, declaratory relief, ruling the Ordinance was preempted by the FPA, was enacted in an arbitrary and capricious manner, and was unenforceable. The court also found the Board had insufficient evidence to justify a 1,000-foot buffer zone.[9] The court issued a peremptory writ of mandamus compelling the County to set aside the Ordinance.[10] The County appealed, asserting the Ordinance was a proper exercise of its police power and was not preempted by existing law.

## DISCUSSION

### I. *Preemption by State Law*

In this case, state and local entities have taken legislative[11] action designed to further competing governmental interests. ██ We consider first whether the County's amendments to its zoning ordinance were preempted by state statutes governing the conduct of timber harvest operations. We are guided here by well-established principles.

██ "Comprehensive zoning has long been established as being a legitimate exercise of the police power. [Citations.]" (*Beverly Oil Co.* v. *City of Los Angeles* (1953) 40 Cal.2d 552, 557 [254 P.2d 865].) "The power of cities and counties to zone land use in accordance with local conditions is well entrenched. [Citations.] The Legislature has specified certain minimum standards for local zoning regulations (Gov. Code, § 65850 et seq.) but has

---

[9]While not contained in the court's written order, this finding was articulated in the court's oral statement of decision.

[10]Although the record does not contain a petition for writ of mandate, the County does not contend the court erred specifically in issuing the writ. Indeed, the County agrees mandamus was the appropriate channel for review of its adoption of the Ordinance.

[11]The adoption of a zoning ordinance constitutes legislative action by the County. (*Arnel Development Co.* v. *City of Costa Mesa* (1980) 28 Cal.3d 511, 514, 516 [169 Cal.Rptr. 904, 620 P.2d 565].)

carefully expressed its intent to retain the maximum degree of local control (see, e.g., *id.*, §§ 65800, 65802).” (*IT Corp.* v. *Solano County Bd. of Supervisors* (1991) 1 Cal.4th 81, 89 [2 Cal.Rptr.2d 513, 820 P.2d 1023].)

While local authority to zone is clearly recognized, it is not limitless. As noted in *People* ex rel. *Deukmejian* v. *County of Mendocino* (1984) 36 Cal.3d 476, 484-485 [204 Cal.Rptr. 897, 683 P.2d 1150]: “ ‘Local legislation in conflict with general law is void. Conflicts exist if the ordinance duplicates [citations], contradicts [citation], or enters an area fully occupied by general law, either expressly or by legislative implication [citations]. . . .’ ”

In passing the FPA, the Legislature expressly preempted regulation of the conduct of timber harvesting operations. Public Resources Code section 4513 declares the Legislature intended “to create and maintain an effective and comprehensive system of regulation and use of all timberlands . . . .” The State Board of Forestry (hereafter the State Board) (*id.*, § 4521.3) was directed to divide the state into districts (*id.*, § 4531) and to adopt “forest practice rules and regulations” for each district (*id.*, § 4551).

By statute, these district rules and regulations “shall apply to the conduct of timber operations” and deal, inter alia, with fire prevention; soil erosion; water quality; watershed and flood control; stocking; protection of young timber growth and soil productivity; control of insects, pests, and disease; protection of natural and scenic qualities; and preparation of timber harvesting plans. (Pub. Resources Code, § 4551.5.) No timber operations may be conducted without submission of a timber harvesting plan and approval by the Director of Forestry and Fire Protection or by the State Board on appeal. (*Id.*, §§ 4004, 4581-4582, 4582.7.)

Of particular significance here, Public Resources Code section 4516.5 expressly preempted local attempts to regulate the conduct of timber operations. Although counties may recommend rules and regulations to the State Board (*id.*, subd. (a)), “. . . individual counties shall not otherwise regulate the conduct of timber operations, as defined by this chapter, or require the issuance of any permit or license for those operations.” (*Id.*, subd. (d).)

If the Ordinance were a clear attempt to regulate the conduct of timber operations, our analysis would stop here. Any such attempt would be preempted expressly by Public Resources Code section 4516.5, subdivision (d) and impliedly by the remainder of the FPA’s comprehensive regulatory scheme.

 We find, however, that the amended zoning ordinance at issue speaks not to *how* timber operations may be conducted, but rather addresses

*where* they may take place. The TPA clearly contemplates local zoning authority be exercised on these issues. Other pertinent legislation demonstrates the Legislature's intent to preserve local zoning authority over the lands at issue here.

As noted above, the TPA specifically addresses the subject of zoning. It requires cities and counties to zone certain qualifying timberlands as TPZ's. (Gov. Code, §§ 51104, subd. (g), 51112, 51113.)[12] The TPA is intended to protect properly conducted timber operations from being prohibited or restricted due to conflict or apparent conflict with surrounding land uses. (*Id.*, §§ 51101, subd. (b), 51102, subd. (b).) This policy is to be implemented "by including all qualifying timberland in timberland production zones." (*Id.*, § 51103.)

The designation of TPZ's is left to local action, which is required under some specifically described circumstances. Exceptions are likewise set out and may result in different zoning, depending on findings made by a county board of supervisors or city council. The board or council is empowered to exclude lands from TPZ's if a majority of the body finds such exclusion to be in the public interest. (Gov. Code, § 51112.) The TPA also contains provisions for rezoning. (*Id.*, §§ 51113, 51120-51131, 51133-51142.) Thus, it is clear that the Legislature has deferred a number of important zoning decisions to local authority, even in the case of TPZ's. It should be recalled, however, that the lands in question here are not TPZ areas.

As to those parcels excluded from the TPZ's, the board or council is empowered to apply an alternate zoning designation for primary use other than timberland, in conformance with the county general plan.[13] The local government may also remove a parcel from a TPZ (Gov. Code, § 51120, subd. (c)) or immediately rezone for conversion from timber production to another use, under some circumstances (*id.*, § 51133, subd. (b)).

Nowhere in the statutory scheme has the Legislature expressly prohibited the use of zoning ordinances such as the one at issue here. In fact, the Legislature has specifically provided for local zoning action. ■■■ Thus,

---

[12]TPZ land may be used *only* for growing and harvesting timber and compatible uses. "The growing and harvesting of timber on those parcels shall be regulated solely pursuant to state statutes and regulations." (Gov. Code, § 51115.) TPZ zoning creates a presumption and gives notice that timber operations are expected to occur on the parcel in the future (*id.*, § 51115.1), and exempts such timber operations (if conducted in compliance with the FPA) from being considered a public or private nuisance (*id.*, § 51115.5, subd. (a)).

[13]Government Code section 51112, subdivision (d). The TPA also provides for later zoning of additional land as a TPZ upon petition of the owner (*id.*, § 51113) and for extension of TPZ status beyond the initial 10-year term (*id.*, § 51114).

we consider whether there has been implied preemption. To evaluate preemption by implication, we consider the purpose and scope of the legislative scheme. ■■ Implied preemption may be accomplished in one of three ways: (1) the general law so completely covers the subject as to clearly indicate the matter is exclusively one of state concern; (2) the general law partially covers the subject in terms clearly indicating a paramount state concern that will not tolerate further local action; or (3) the general law partially covers the subject and the adverse effect of a local ordinance on transient citizens of the state outweighs the possible municipal benefit. (*People* ex rel. *Deukmejian* v. *County of Mendocino, supra,* 36 Cal.3d at p. 485.)

■■ Applying these tests to the case before us, we see that there has been no implied preemption. (1) The general law has not completely covered the subject of zoning. To the contrary, local zoning decisions are specifically provided for. (2) The general law not only tolerates but invites further local action as to zoning. (3) There is nothing in the record before us to support a conclusion that the adverse effect on transient citizens, if any, will outweigh the possible municipal benefit. The Supreme Court has stated: "Preemption by implication of legislative intent may not be found when the Legislature has expressed its intent to permit local regulations. Similarly, it should not be found when the statutory scheme recognizes local regulations." (*People* ex rel. *Deukmejian* v. *County of Mendocino, supra,* 36 Cal.3d at p. 485.) The statutory scheme here recognizes local regulation as to zoning decisions.

Reading the TPA and the FPA together, we are persuaded the Legislature did not intend to preclude counties from using their zoning authority to prohibit timber cutting on lands outside the TPZ's. Under the FPA, the "conduct" of timber harvesting operations is exclusively governed by state law. "Conduct" is not given a specialized definition in the FPA. Its ordinary meaning is "the act, manner, or process of carrying out (as a task) or carrying forward (as a business, government, or war)." (Webster's Third New Internat. Dict. (1970) p. 473.) That the Legislature intended to use the term "conduct" in such a way is born out by the specific kinds of issues the State Board's rules and regulations are to address. Flood control, stand density, reforestation methods, soil movement, debris disposal and the like (Pub. Resources Code, § 4516.5, subd. (a)), are clearly matters relating to the process of carrying out timber operations.

In support of its claim of express preemption, Big Creek relies upon several pieces of legislative history regarding Public Resources Code section 4516.5, subdivision (d). This history, however, sheds little or no light on the particular question before us. There is no discussion of county zoning

authority or its relation to regulation of the "conduct" of logging operations. The parties herein essentially agree as to the purpose of the statute: Big Creek states it was intended to "extinguish the fragmented regulations enacted by local jurisdictions throughout the state"; the County that its purpose was "to achieve uniformity in the regulation of the conduct of timber harvesting operations . . . and to eliminate duplicative regulations." A zoning law allocating competing land uses among the various parts of a county, however, neither conflicts with nor duplicates general state regulations governing how one such activity is to be conducted where allowed.

Big Creek's expansive reading of Public Resources Code section 4516.5, subdivision (d) would apparently preclude all local zoning control over timber operations, so that cities and counties would be required to allow commercial logging in residential districts, for example. Neither the language of the statute nor the history provided support such a reading.

In support of its implied preemption claim, Big Creek cites several regulations adopted pursuant to the FPA which, it contends, "exhaustive[ly]" address concerns, such as noise, windthrow, fire hazard, and erosion, identified by the County as motivating the Ordinance.[14] As the County notes in response, Big Creek's argument begs the question. The County concedes it has no power to adopt its own rules on the conduct of timber operations as covered in the cited state regulations and touching on matters such as harvesting methods and quantities, the contents of a timber harvesting plan, the hours of logging operations, the treatment of slash and debris, and the maintenance of erosion control facilities. Nothing in the FPA or TPA, however, precludes the County from addressing some of the same concerns by excluding logging activity from some of the non-TPZ land under its zoning jurisdiction.

Logging, even when conducted according to state regulations, may have *some* impacts properly addressed by the zoning authority. That the state has sought to reduce and control these same occurrences through general regulation does not preempt local zoning control, any more than the state and federal regulation of industrial air pollution would preclude a local zoning

---

[14]Big Creek asserts that current State Board rules "prohibit timber harvesting within 200 feet of a dwelling used for human habitation." None of the regulations it cites, however, contain any such prohibition. Title 14, California Code of Regulations, sections 917.2, subdivision (c) and 917.4, subdivision (a) govern the disposal and treatment of logging slash near homes and roads in the Coast Forest District; section 928.2, subdivision (b)(2), one of several rules adopted for the County pursuant to Public Resources Code section 4516.5, requires the location of homes to be marked on timber harvesting plan maps. The remaining cited sections are similar regulations applying in other counties and forest districts.

authority from relying on air pollution as a reason for excluding industrial plants from residential districts.

Finally, Big Creek argues the purpose of the TPA was to maintain large parcels of land for timber production, "not to carve out one zone allowing state regulated commercial timber production and harvesting, while allowing local regulation of timber production in all other zones." However, the County does not contend it has authority to regulate the conduct of logging on non-TPZ lands, but only that under the TPA it retains its traditional zoning authority to determine in what zones (other than the TPZ's) logging, like other land uses, may be pursued.[15]

In conclusion, under the TPA, localities must designate certain lands as TPZ's. These zones are dedicated to timber growing and harvesting, and localities may not prohibit logging on them. As to other lands that may contain timber, the TPA expressly reaffirms local authority to choose appropriate zoning. Local legislative bodies retain authority to exclude from the TPZ's certain parcels when they believe exclusion is in the public interest. (Gov. Code, § 51112, subds. (b), (c).) Localities also retain the authority to choose the non-TPZ zones into which excluded or removed parcels are placed. (*Id.*, §§ 51112, subd. (d), 51120, subd. (c), 51133, subd. (b).) Nothing in either the TPA or the FPA suggests localities are restricted in what uses they may allow or prohibit in non-TPZ zones.

## II. *Reasonableness of the Ordinance as a Zoning Regulation*

While local bodies retain broad discretion in zoning issues, their authority is not boundless. Zoning restrictions may be stricken if they are "arbitrary and unreasonable and without substantial relation to public health, safety, or morals." (*Schroeder* v. *Municipal Court* (1977) 73 Cal.App.3d 841, 848 [141 Cal.Rptr. 85].) In other words, "a land use restriction lies within the public power if it has a 'reasonable relation to the public welfare.' [Citations.]" (*Associated Home Builders etc., Inc.* v. *City of Livermore* (1976)

---

[15]Government Code section 51115.1, subdivision (b), upon which Big Creek relies in this regard, is of no assistance to it. Subdivision (a) of section 51115.1 provides that a parcel's TPZ zoning creates a presumption that timber operations are expected to occur in the future on that property. Subdivision (b) contains a further declaration "that *this section* is not intended and shall not be construed as altering any substantive or procedural requirement of [the FPA or state forestry regulations]." (Italics added.) The evident purpose of the declaration is to make clear that the presumption arising from TPZ zoning does not provide an exemption from the FPA and the rules adopted pursuant to it. By its terms, the subdivision relates only to the section in which it appears, Government Code section 51115.1, and does not state, as Big Creek urges, that the TPA as a whole has no bearing on interpretation of the FPA.

18 Cal.3d 582, 604 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.2d 1038].)
" 'The courts may differ with the zoning authorities as to the "necessity or propriety of an enactment," but so long as it remains a "question upon which reasonable minds might differ," there will be no judicial interference with the municipality's determination of policy.' [Citation.] In short, as stated by the Supreme Court in *Euclid* v. *Ambler Co.* [(1926) 272 U.S. 365, 388 [71 L.Ed. 303, 311, 47 S.Ct. 114, 54 A.L.R. 1016], 'If the validity . . . be fairly debatable, the legislative judgment must be allowed to control.' " (*Id.* at p. 605.) Setbacks and similar buffers are among the tools counties may use in the interest of sound community planning. (*Hutcherson* v. *Alexander* (1968) 264 Cal.App.2d 126, 132 [70 Cal.Rptr. 366, 38 A.L.R.3d 636].)

■ Big Creek contends the Board's action was "arbitrary and unreasonable," because the record before the Board does not show a 1,000-foot buffer zone is necessary. The County's planning staff and commission, Big Creek emphasizes, had recommended the interim 1,000-foot buffer zones be replaced with permanent zones of between 200 and 500 feet.

The question, however, is not whether this court or the lower court is convinced 1,000 feet of buffer are "necessary," or whether smaller zones would adequately accommodate the conflicting land uses. The legal issue is whether the propriety of the larger zones is a fairly debatable question, one upon which reasonable minds could differ. " 'Somewhere the line of demarcation must be drawn, and it is primarily the province of the municipal body to which the zoning function is committed to draw that line of demarcation, and it is neither the province nor the duty of courts to interfere with the discretion with which such bodies are invested in the absence of a clear showing of an abuse of that discretion.' " (*Consolidated Rock Products Co.* v. *City of Los Angeles* (1962) 57 Cal.2d 515, 533 [20 Cal.Rptr. 638, 370 P.2d 342], quoting *Miller* v. *Board of Public Works* (1925) 195 Cal. 477, 495 [234 P. 381, 38 A.L.R. 1479].)

The Ordinance was not adopted arbitrarily, but followed the presentation of information regarding the character of the affected districts and the potential conflicts between land uses thereon. The County's director of environmental services stated that, despite the staff recommendation, the Board "should and could feel very comfortable adopting a thousand feet. That would be the maximum protection." A geologist familiar with the erosion problems of the Santa Cruz Mountains opined a 1,000-foot buffer would be an important element in mitigating erosion impacts in the vicinity of residences. A resident of the Skylonda area, which she described as "a

residential area . . . with many small lots" and "modest family homes on a suburban street," stated logging had been proposed on an RM-zoned parcel across the street from her house. She believed "[p]utting one thousand feet between my children playing in my yard and log trucks, chainsaws and slash burning is the minimum." Another homeowner in a forested area of the County spoke in favor of a large buffer zone because of the erosion "even the best kind of logging" may cause to adjacent properties in hilly areas. A representative of the Skylonda Area Association testified and presented written materials, including excerpts from a Stanford University study of logging in urban counties. This text pointed out that removing the larger trees from a redwood forest increases, rather than decreases, the fire danger, in part because it may sharply reduce the "fog drip" effect that keeps the mature redwood forest moist. The authors recommended a buffer zone of unlogged, moist redwood forest be maintained around roads and residential areas. A strip "at least" 800 feet wide is required.[16] Another speaker pointed out that at a walking pace of five miles per hour, five hundred feet could be travelled in just over a minute and one thousand feet in a little more than two minutes. As she remarked, "A fire going uphill travels with amazing speed." In light of this and other information before the Board, we conclude the adoption of a 1,000-foot buffer in non-TPZ zones, potentially affecting only about 4 percent of the County's total timberlands, was not arbitrary, unreasonable, or substantially unrelated to public health or safety. (*Schroeder* v. *Municipal Court, supra,* 73 Cal.App.3d at p. 848.) Reasonable minds may differ about the specifics, but the Board's action is based on information properly brought before it and "represents a reasonable accommodation of the competing interests." (*Associated Home Builders etc., Inc.* v. *City of Livermore, supra,* 18 Cal.3d at p. 609, fn. omitted.)

We conclude the zoning regulation is not preempted by state law and was not arbitrarily or capriciously adopted. These being the bases of the trial court's decision, its order and judgment for declaratory relief and peremptory writ of mandamus must be reversed.[17]

---

[16]Although Big Creek complains these text excerpts were introduced before the Board without being "authenticated, nor were the qualifications of the authors listed," it cites no authority suggesting a board of supervisors may not consider such information in support of a legislative zoning decision. The Evidence Code does not govern such legislative hearings. (Evid. Code, § 300.)

[17]Having concluded the FPA does not expressly or impliedly preempt the Ordinance, we need not decide whether, as the County asserts, the Ordinance also falls within the FPA's savings clause for local declarations of nuisance (Pub. Resources Code, § 4514, subd. (a)) or whether the Ordinance's nuisance finding was invalidated by other provisions of state law, as Big Creek argues. Nor do we decide whether the Ordinance is in conformity with the County's general plan, an issue raised, but not decided, below and not briefed in this court.

## DISPOSITION

The order and judgment of the superior court are reversed. The County shall recover its costs on appeal.

Chin, P. J., and White, J.,* concurred.

A petition for a rehearing was denied January 30, 1995, and respondent's petition for review by the Supreme Court was denied March 23, 1995. Mosk, J., was of the opinion that the petition should be granted.

---

*Retired Presiding Justice of the Court of Appeal, First District, sitting under assignment by the Chairperson of the Judicial Council.