[No. G014383. Fourth Dist., Div. Three. Mar. 10, 1995.]

PAUL J. BURCHETT et al., Plaintiffs and Appellants, v.
CITY OF NEWPORT BEACH et al., Defendants and Respondents.

**COUNSEL**

James E. Wilkowski and Lawrence K. Harvey for Plaintiffs and Appellants.

Rutan & Tucker and M. Katherine Jenson for Defendants and Respondents.

## OPINION

**SONENSHINE, J.**—Paul J. Burchett and Doreen A. Burchett appeal the dismissal of their complaint after the court (1) sustained without leave to amend the demurrer of City of Newport Beach (City) and Bob Wynn, city manager, and (2) granted motions to quash service by certain specially appearing City officials and department heads. The Burchetts sought $8.7 million in damages for the City's refusal to allow them to retain a nonconforming driveway in connection with proposed redevelopment of their residential property.

I

The Burchetts' property contains a 40-year-old duplex, accessible from an alley abutting the land in the rear as well as by a driveway from the street in front of the building. The front driveway, termed a "curb cut," is presently a nonconforming use (although allowed for the present building because it predated the policy) by reason of an intervening "Driveway Approach Policy" instituted by the City. Council policy L-2, enacted to preserve street parking and reduce traffic conflict points, provides: "Street curb openings shall not be permitted to residential property which abuts an alley." A property owner may take exception to the policy and obtain an encroachment permit. The permit may be requested from the department of public works in the first instance or the city council by way of appeal from a denial by the department. "No building permit shall be issued on a parcel whose access requires City Council review for an encroachment permit on public property, until said encroachment permit has been issued." And existing driveway approaches may be ordered removed as a condition of final approval of any alteration work and prior to issuance of a certificate of occupancy.

Wishing to raze the duplex and construct two condominiums, the Burchetts wrote a letter to the planning department, asking about use of the "existing driveway." No plans were included; nor was there any application for an exception to the City's driveway policy. Nonetheless, an assistant planner penned a note at the bottom stating the letter's information was "correct."[1] Unhappily, this was neither the proper method nor the proper department to approach. Their subsequent application for a permit was

---

[1] The letter provides: "To Whom it concerns: [¶] We are in the beginning stages of improving our 40 year property at 410 Acacia, CDM. [¶] The new design is predicated on using the existing front driveway. Since our projected 2 story condominium design depends upon separate locations of garaging, the rear 2 car carport in the back and the front unit a 2 car garage. [¶] We believe that the separation would give added independence to the owners. [¶] Before we start spending of funds we wish to have a commitment from the city that the existing drive may be used in the improvement design. [¶] Your final decision is important

denied by the public works department; appeal to the council was equally unavailing.

In April 1992, the Burchetts filed a complaint for damages (approximately $30,000)[2] against the City, its manager, attorney, public works director, planning director and several city council members. Ten counts covered breach of agreement, breach of fiduciary duty, fraud, bad faith, denial of equal protection and due process and deprivation of civil rights under color of law (42 U.S.C. § 1983).

The complaint was not served within 60 days as required by the local rules. An evaluation conference was set for August; the Burchetts did not appear. The complaint had still not been served by September 17, the continued date set by the court for evaluation. At that hearing, the court granted the Burchetts a reprieve, but ordered them to serve the defendants by October 15. The City and the retired city manager were personally served. The remaining defendants were not. The marshal's return indicates no attempt at personal service; each received substituted service by leaving the summons with an assistant to the city clerk and mailing a copy to the named defendants.

Defense counsel notified plaintiffs' counsel orally and in writing that the service was improper. There was no further attempt to personally serve these defendants before the October 15 deadline. A motion to quash was filed and set for hearing on November 13. Judge Schenk took the matter under submission, but later recused himself. Judge Wilkinson inherited the matter. Defendants sought ex parte relief from answering the complaint until a ruling on the motion to quash. The Burchetts immediately filed a motion to disqualify Wilkinson, halting the ex parte hearing.

A second motion to quash service/dismiss was filed in December. There was no answer. The matter was heard and granted in March 1992.

Meanwhile, the City and the city manager had demurred to the complaint in November 1991. The Burchetts made no response to this pleading before

enough that we will abandon the property improvement plans if we cannot receive your approval. [¶ We would appreciate a statement in writing that the use of the existing driveway meets with city approval." A "P.S." states, "We asked Planning Dept staff last year & were told the driveway could be left as is but want a recent verification before proceeding."

A handwritten note on the bottom of the page reads: "5-9-91 This information is correct as described above. [Signed] Christy Teague, Assistant Planner."

[2]At the city council hearing, they stated they had already spent $5,000 for an architect. By the time the claim was submitted to the City, their damages had risen to $29,887. And the complaint now seeks $8.7 million.

the March hearing. The court sustained the demurrer without leave to amend. A judgment of dismissal as to all defendants was entered on March 23.

## II

### *Motion to Quash Service of Process*

■ The specially appearing defendants contend they are entitled to dismissal because the Burchetts failed to abide by the requirements of Code of Civil Procedure section 415.20, subdivision (b): "If a copy of the summons and of the complaint cannot *with reasonable diligence* be personally delivered to the person to be served . . . a summons may be served by leaving a copy of the summons and of the complaint at such person's . . . usual place of business . . . ." (Italics added.) Rather than finding any reasonable diligence in the pursuit of personal service on these defendants, we find no evidence of any diligence whatsoever. As noted in the Legislative comment to the section, "Personal delivery must be attempted in all cases where this alternative method of service is used."

The Burchetts failed to effect or even attempt service within the time limits set by the fast track rules. They then failed to attend the August evaluation conference set by the court. They did condescend to appear at the continued hearing in September, again without having perfected service. The court leniently allowed them further time, ordering them to serve the parties by October 15. Still there was no attempted personal service; the papers were merely left with a deputy clerk[3] and copies were sent through the mail. Once that occurred, the Burchetts were told by opposing counsel the service was ineffective. Although there was time before the October 15 deadline, the Burchetts declined to act.

In *Espindola* v. *Nunez* (1988) 199 Cal.App.3d 1389 [245 Cal.Rptr. 596], we addressed a situation where there *was* reasonable diligence in attempting service. "[T]he process server attempted three times to serve [defendants] personally at their home. On the fourth try, he found [wife] at home and served her. Knowing that she was Jose's wife and a codefendant in the action, the process server left Jose's copy of the summons and complaint with her . . . . Under these circumstances, reasonable diligence was shown. 'Ordinarily, . . . two or three attempts at personal service at a proper place should fully satisfy the requirement of reasonable diligence and allow substituted service to be made.' [Citation.]" (*Id.* at pp. 1391-1392.) The

---

[3]The clerk's declaration states she was merely "handed a stack of documents" over three hours before the council meeting. The marshal's return indicates copies were left with the clerk; there was no mention of any attempt at personal service.

present case bears no resemblance to *Espindola*. There was not even *one* attempt made to effect personal service. The papers were unceremoniously dumped on the desk of a deputy clerk. Even then, with notice of time to correct the error, the Burchetts declined to follow the rules.

The Burchetts claim there was no court order (to serve the defendants by October 15) entered in the record. However, the order was clearly made *and* so understood by them. At the hearing on the first motion to quash, the court said, "There was a specific order made that all parties had to be served by October the 15th. And all of you, meaning both of you, have agreed that that order was made. Am I wrong?" Replied the Burchetts' attorney, "No, that's correct. Yes, your honor, the court made an order that they be served by October 15." That seems sufficiently clear.

The Burchetts complain it was the marshal's office which failed to properly serve the defendants. However, the Burchetts' instructions to the marshal, while indicating personal service was desired, stated, in the event the defendants were not served prior to the council meeting, "then do a substitute service using the city hall's address . . . ." This was hardly a *requirement* for personal service.[4] The specially-appearing defendants were easily reachable. At the very least, they were available at scheduled council meetings. We find no error in the court's order quashing service.[5]

### III

*Demurrer*

■■■ The City and its former city manager demurred to the complaint. The Burchetts did not respond, despite the passage of almost four months from the demurrer's filing until hearing on the matter. Now they argue the court erred in sustaining the demurrer without leave to amend.

The Burchetts offer no explanation as to how they would change their pleading. They do suggest the trial court based its conclusion on the immunity granted to the City and its employees with regard to discretionary

---

[4]The Burchetts also suggest there should be a separate standard for government officials, stating, "How many attempts would a process server have to make on the President of the United States? How many times would the Secret Service throw him off the White House property before a court could conclude that more than one attempt would be required?" We rather imagine one "toss" would constitute due diligence. Here, there were no attempts and no tosses, thus no due diligence.

[5]The Burchetts contend there was no request for dismissal. But there was. They also insist dismissal is not authorized under the fast-track rules. But it is. Moreover, "unexplained and inexcusable delay in serving the summons has been held to constitute sufficient grounds for dismissal. [Citation.]" (*Espindola* v. *Nunez, supra,* 199 Cal.App.3d 1389, 1393.)

determinations. And, claim the Burchetts, the federal tort causes of action are not subject to this immunity. Nonetheless, the court stated its ruling in the conjunctive: "Moving parties appear to be statutorily immune *and* there's a failure to state a cause of action as to each count."[6] (Italics added.)

The complaint contains the following causes of action:

Count I: The Burchetts allege breach of a "written agreement with Defendant City of Newport Beach whereby said City agreed to allow Plaintiffs to improve said real property with a two story condominium structure and retain the existing driveway to said property . . . ." The allegation is based on the letter to the planning department with the subscript notation by an assistant planner indicating the facts were "correct."

First, the City's charter provides it cannot be bound by any contract "unless the same shall be in writing, approved by the City Council and signed on behalf of the City by the Mayor and City Clerk or by such other officer or officers as shall be designated by the City Council." Second, the assistant planner was *neither* the person to contact, nor a member of the correct department. ■ "No government, whether state or local, is bound to any extent by an officer's acts in excess of his [or her] authority." (*Horsemen's Benevolent & Protective Assn.* v. *Valley Racing Assn.* (1992) 4 Cal.App.4th 1538, 1563-1564 [6 Cal.Rptr.2d 698].) "One who deals with the public officer stands presumptively charged with a full knowledge of that officer's powers, and is bound at his [or her] peril to ascertain the extent of his [or her] powers to bind the government for which he [or she] is an officer, and any act of an officer to be valid must find express authority in the law or be necessarily incidental to a power expressly granted." (*Id.* at p. 1564.)

■ Second, to the extent the Burchetts claim they have a vested right to build the condominiums *and* retain the extra street access, they are incorrect. *McCarthy* v. *California Tahoe Regional Planning Agency* (1982) 129 Cal.App.3d 222 [180 Cal.Rptr. 866] is instructive. There, a developer intended to raze buildings on certain property and build commercial offices. The property had three driveways accessing Highway 50. The city issued a foundation building permit and a demolition permit. The California Department of Transportation approved an encroachment permit, allowing one driveway access to Highway 50. Meanwhile, the California Tahoe Regional

---

[6]The Burchetts complain they were not allowed to argue at the hearing. However, they had filed no opposition to the motions. The court announced, "I think that [allowing argument on the merits without having filed opposition] essentially puts someone in a position to ambush a moving party. About the only thing, in this sort of circumstance, that I would allow you to comment on, would be with regard to the situation where you had filed opposition, but somehow or other the court didn't get it."

Planning Agency enacted a land-use ordinance for the area, requiring a permit for any addition to existing developments. It refused a permit to the developer unless there "be no direct vehicular access to Highway 50." (*Id.* at p. 227.) The developer sued, contending it had a vested right to continue based on the foundation permit. The appellate court determined "an applicant seeking an encroachment permit has no vested, preexisting right to obtain one." (*Id.* at p. 230.) "Nor was plaintiffs' asserted right to vehicular access to Highway 50 a 'fundamental' one." (*Ibid.*) Moreover, "plaintiffs have access to their property from a city street which intersects the nearby state highway. A direct access to Highway 50, while no doubt commercially advantageous, cannot be construed of such an economically essential character as to be of a fundamental nature." (*Id.* at p. 231.)

The Burchetts did not even have a building permit. Nor was there an official agreement to allow building the condominiums. Even treating the planning department employee's subscript as some sort of license or permit to continue does not bind the City to issuance of an encroachment or building permit. Any purported grant of a right to develop was invalid. ■ "[T]he public and community interest in preserving the community patterns established by zoning laws [and ordinances] outweighs the injustice that may be incurred by the individual in relying upon an *invalid* permit to build issued in violation of [those] laws." (*Pettitt* v. *City of Fresno* (1973) 34 Cal.App.3d 813, 820 [110 Cal.Rptr. 262].) "[A]ny alleged agreement to permit development without application of land use regulations would be invalid and unenforceable as contrary to public policy." (*Smith* v. *City and County of San Francisco* (1990) 225 Cal.App.3d 38, 55 [275 Cal.Rptr. 17].) ■ To the extent the Burchetts expended any sums, they did so at their peril.

And, as noted by the City, if the Burchetts are relying on negligent misrepresentation by a city employee, the immunity statutes control. (Gov. Code, § 818.4.) Moreover, "section 818.4 of the Government Code provides that a public entity is not liable for an injury caused by the refusal to issue a permit where the entity is authorized by law to determine whether or not the permit should be issued. (See also Gov. Code, § 821.2.) ■ Manifestly this statute is a bar to the [damages] causes of action." (*Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 127 [109 Cal.Rptr. 799, 514 P.2d 111].) And this is true " 'even though negligence is involved in issuing or failing to issue the order or permit.' " (*Burns* v. *City Council* (1973) 31 Cal.App.3d 999, 1003 [107 Cal.Rptr. 787].)

■ Counts II, III, IV, V and X: These causes of action all claim breach of a mandatory fiduciary duty, allegedly depriving the Burchetts of property

without due process, taking "private property for public use without just compensation, denying them equal protection of the law," and their "privileges or immunities by virtue of the fact that Plaintiffs are citizens of the United States of America by birthright." The Burchetts make no argument on appeal as to the trial court's rejection of these counts based on statutory immunities.[7] In fact, in keeping with their usual failure to respond to court orders or to opposition pleadings, they filed no reply brief in answer to any of the arguments raised by the City. These issues merit no further discussion.

Counts VI, VII, VIII and IX: Supposedly relying on the federal Civil Rights Act (42 U.S.C. § 1983),[8] the Burchetts claim to have been deprived of due process, equal protection, and property rights, using little else than the constitutional "buzz words." The sixth cause of action alleges the Burchetts were deprived "of their protected property right" to develop their property as they saw fit by "unlawful actions under said color of law in requiring Plaintiffs to make an application to keep that property right which they already had or owned. Said unlawful action was that plaintiffs were required by Defendants to file with the Defendant City of Newport Beach an 'Encroachment Permit.'" Because no permit was forthcoming, they were deprived of the use of their property. However, they were not deprived of the existing use of their property and, in fact, could continue its nonconforming use. The driveway requirements only affected them if and when they desired to change or further develop the existing use.

■ Land-use ordinances are specifically allowed by the California Constitution—article XI, section 7 states that a "city may make and enforce within its limits all local police, sanitary, and other ordinances and regulations not in conflict with general laws." Our Supreme Court "declared that an ordinance restricting land use was valid if it had a 'real or substantial relation to the public health, safety, morals or general welfare.' [Citation.] A year later the United States Supreme Court, in the landmark case of *Euclid* v.

---

[7] The City also highlights the Burchetts' failure to seek a writ of mandate to review the council's administrative decision. "[I]n *Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465 [131 Cal.Rptr. 90, 551 P.2d 410], the Supreme Court held a mandamus proceeding is a prerequisite to a tort action. . . . The court also observed general policy reasons for the exhaustion rule, such as according proper respect to an association's quasi-judicial administrative decisions and simplifying court procedures by providing a uniform practice of judicial rather than jury review of quasi-judicial administrative decisions." (*Swartzendruber* v. *City of San Diego* (1992) 3 Cal.App.4th 896, 903 [5 Cal.Rptr.2d 64].)

[8] The section provides: "Every person who, under color of any statute, ordinance, regulation, or usage, of any State or Territory, or the district of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . ." (42 U.S.C. § 1983.)

*Ambler Co.* (1926) 272 U.S. 365 [71 L.Ed. 303, 47 S.Ct. 114, 54 A.L.R. 1016], adopted the same test, holding that before a zoning ordinance can be held unconstitutional, 'it must be said . . . that [its] provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.' [Citation.] Later California decisions confirmed that a land use restriction lies within the public power if it has 'a reasonable relation to the public welfare.' [Citations.]" (*Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 604 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038].) "Setbacks and similar buffers [like curb cut restrictions] are among the tools counties may use in the interest of sound community planning." (*Big Creek Lumber Co.* v. *County of San Mateo* (1995) 31 Cal.App.4th 418, 429 [37 Cal.Rptr.2d 159].)

■ A recent case, *Stubblefield Construction Co.* v. *City of San Bernardino* (1995) 32 Cal.App.4th 687 [38 Cal.rptr.2d 413], refused to recognize a claim of infringement of due process and equal protection rights under a much more egregious fact situation than here presented. In *Stubblefield*, a developer with 600 acres of land planned to build multifamily housing. He agreed to allow annexation to the City of San Bernardino in exchange for a promise the necessary R-3 zoning would follow. It did. However, a city councilman representing the area "[a]lthough originally a supporter of the project . . . subsequently became a powerful opponent." (*Id.* at p. 697.) The city revised its R-3 zoning ordinance, portions of which adversely affected Stubblefield's project, particularly the requirement of a conditional use permit. He "was assured that the new ordinance would not apply to his project." (*Ibid.*) The councilman proposed an urgency ordinance which emasculated that assurance. A series of subsequent council actions essentially killed the project.

The *Stubblefield* court held the developer had "no vested right to build any particular buildings because it had not applied for or received a building permit for its project." (*Stubblefield Construction Co.* v. *City of San Bernardino, supra,* 32 Cal.App.4th at p. 708.) Moreover, "the facts proven . . . simply do not rise to the level of a substantive due process violation." (*Id.* at p. 710.) " '[T]he conventional planning dispute—at least when not tainted with fundamental procedural irregularity, racial animus, or the like—which takes place within the framework of an admittedly valid state subdivision scheme is a matter primarily of concern to the state and does not implicate the Constitution. This would be true even were planning officials to clearly violate, much less 'distort' the state scheme under which they operate.' " (*Id.* at p. 712.) "This is an ordinary dispute between a developer and a municipality and we conclude that the claims asserted simply do not qualify as deprivations of substantive due process." (*Ibid.*)

█ Last, although "[i]t is an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable possibility that the plaintiff can amend the complaint to state a cause of action" (*New Plumbing Contractors, Inc.* v. *Nationwide Mutual Ins. Co.* (1992) 7 Cal.App.4th 1088, 1098 [9 Cal.Rptr.2d 469]), the Burchetts have offered not even a hint as to how they would amend. They had over four months after the demurrer was filed, but made no attempt to amend the complaint or file any opposition to the demurrer. There has been no suggested change proffered on appeal.

As noted in *New Plumbing*, "While the showing as to how the complaint may be amended need not be made to the trial court and can be made for the first time to the reviewing court [citation], [an] argument, raised for the first time at oral argument, is not adequate to justify our finding the trial court abused its discretion. New issues cannot generally be raised for the first time in oral argument. [Citations.] █ Furthermore, [plaintiff] has offered no authority demonstrating that these new causes of action are viable, nor did it offer any facts in support other than [a] conclusion . . . ." (*New Plumbing Contractors, Inc.* v. *Nationwide Mutual Ins. Co., supra*, 7 Cal.App.4th 1088, 1098.) Here, there was not even a suggestion of the potential viability of *any* new cause of action, either below or on appeal. The demurrer was properly sustained without leave to amend.

Judgment affirmed.

Sills, P. J., and Wallin, J., concurred.

A petition for a rehearing was denied March 31, 1995, and appellant's petition for review by the Supreme Court was denied May 25, 1995.