[No. A077879. First Dist., Div. Five. Feb. 5, 1998.]

WESTHAVEN COMMUNITY DEVELOPMENT COUNCIL, Plaintiff and Appellant, v.
COUNTY OF HUMBOLDT et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

*\*Pursuant to rules 976 and 976.1, California Rules of Court, this opinion is certified for publication with the exception of part II.B.

## COUNSEL

Gaynor & Diamond and Nancy Diamond for Plaintiff and Appellant.

Tamara C. Falor, County Counsel, Wendy B. Chaitin, Assistant County Counsel, Ginevra K. Chandler, Deputy County Counsel, Stokes, Steeves, Rowe & Hamer and Chris Johnson Hamer for Defendants and Respondents.

## OPINION

**JONES, J.**—This appeal presents one principal issue: whether the Z'Berg-Nejedly Forest Practice Act of 1973 (FPA)[1] preempts a county ordinance creating a local permit requirement for timber operations. We conclude that

---

[1]Codified as Public Resources Code sections 4511 to 4628. Unless otherwise indicated, all further statutory references are to the Public Resources Code.

the FPA preempts application of such an ordinance where the timber operations are to occur on a land area of three or more acres. We affirm the trial court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Westhaven is a community located in Humboldt County. Westhaven Community Development Council (WCDC) is a nonprofit corporation comprised of residents and owners of property located in the Westhaven area.

In 1994, Jon Cook owned 14 contiguous parcels of land approximately 4 acres in total size located in Westhaven (the Property). At that time, the Property was undeveloped and timbered with a healthy, older stand of mixed conifers varying in age from 50 to 120 years. The Property is zoned residential/single family.

Cook sought to harvest timber on the Property. Pursuant to the FPA, "[n]o person shall conduct timber operations unless a timber harvesting plan prepared by a registered professional forester has been submitted for such operations to the department pursuant to this article." (§ 4581.) Cook therefore submitted a proposed timber harvesting plan to the California Department of Forestry (CDF). The CDF approved a modified version of Cook's initial timber harvesting plan.

Before Cook commenced his planned timber harvesting operations, WCDC filed this action against Cook and Humboldt County. WCDC explains that the county's zoning ordinances do not identify commercial timber production as a principal use of property which is zoned single-family residential. Commercial timber harvesting is, however, a conditionally permitted use of property zoned single-family residential. Humboldt County zoning regulations require that "[a] Use Permit must be secured . . . prior to the initiation, modification or expansion of a use or development that is permitted only as a *conditionally permitted use* in a particular zone." WCDC therefore argues that timber harvest activities are prohibited on the Property unless the county zoning authority issues a use permit. WCDC's complaint requested an injunction preventing logging operations on the Property "unless and until all appropriate permits have been acquired."

Within days after the complaint was filed, Dean Winkelhaus acquired the Property. Winkelhaus was added as a defendant and Cook was dismissed from the action.

WCDC's application for a temporary restraining order and a preliminary injunction was granted. However, after a trial on the merits, the court denied WCDC's request for a permanent injunction.

The timber harvesting has since occurred. On that basis, respondents moved to dismiss this appeal as moot. We denied the motion.

## II. Discussion

### A. *The FPA Preempts Application of Humboldt County Zoning Regulations to the Extent That Those Regulations Require a Permit for Timber Operations on a Land Area of Three or More Acres*

WCDC contends that the timber operations at issue in this appeal should not have been allowed to proceed until Winkelhaus obtained a conditional use permit from the county. Respondents argue in response that Winkelhaus did not need a permit because the FPA preempts the county's permit requirement if the land area to be harvested is three or more acres.

The language of the FPA provides the answer to this dispute. Section 4516.5, subdivision (d), of the FPA states that individual counties shall not "regulate the conduct of timber operations, as defined by this chapter, or require the issuance of any permit or license for those operations."[2] "Timber operations," as defined in the FPA "means the cutting or removal or both of timber or other solid wood forest products, including Christmas trees, from timberlands for commercial purposes, together with all the work incidental thereto . . . ."[3] (§ 4527.) Joining this definition of "timber operations" with the language of subdivision (d) of section 4516.5, it is clear that counties are prohibited from requiring the issuance of "any permit" for the "cutting or removal . . . of timber . . . for commercial purposes."[4]

Thus, if section 4516.5 applies here, its plain language preempts any county zoning regulation that would require Cook or Winkelhaus to obtain a

---

[2] Section 4516.5 contains an exception to this prohibition (which is not relevant here): "The board may delegate to individual counties its authority to require performance bonds or other surety for the protection of roads, in which case, the procedures and forms shall be the same as those used in similar circumstances in the county. The board may establish reasonable limits on the amount of performance bonds or other surety which may be required for any timber operation and criteria for the requirement, payment, and release of those bonds or other surety. If the county fails to inform the director of the claims within 30 days after the completion report has been filed, the bond or surety shall be released." (§ 4516.5, subd. (e).)

[3] This definition of "timber operations" continues by stating, "including, but not limited to, construction and maintenance of roads, fuel breaks, firebreaks, stream crossings, landings, skid trails, beds for the falling of trees, fire hazard abatement, and site preparation that involves disturbances of soil or burning of vegetation following timber harvesting activities conducted after January 1, 1988, but excluding preparatory work such as treemarking, surveying, or roadflagging." (§ 4527.)

[4] Subdivision (a) of section 4516.5 states that "[f]or purposes of this *section*, 'timber operations' includes, but is not limited to, soil erosion control, protection of stream character and water quality, water distribution systems, flood control, stand density excavation and fill requirements, slash and debris disposal, haul routes and schedules, hours and dates of logging,

use permit prior to harvesting timber on the Property. Section 4516.5 contains one limit on its application: It "does not apply to timber operations on any land area of less than three acres and which is not zoned timberland production." (§ 4516.5, subd. (f).) This pair of conditions is not satisfied here. The Property is not zoned for timberland production[5] and the parties stipulated that the aggregate size of the 14 lots that comprise the Property is approximately 4 acres. We therefore conclude that section 4516.5 applies to the Property.

WCDC suggests in a footnote to its statement of facts that the size of the "land area" for purposes of section 4516.5 is not the aggregate size of the 14 lots but is instead the size of each separate lot. WCDC apparently contends that section 4516.5 does not apply here because each of the 14 lots is less than 3 acres in size. WCDC does not mention this point in its argument and does not cite any authority for its suggested interpretation of "land area." To the contrary, the argument section of WCDC's brief seems to assume that the Property is subject to section 4516.5. In sum, WCDC has waived on appeal any issue related to the size of the "land area" for purposes of section 4516.5. (See *People* v. *Bonin* (1989) 47 Cal.3d 808, 857 fn. 6 [254 Cal.Rptr. 298, 765 P.2d 460] [court may reject issue not properly supported by adequate argument].) Like WCDC, we assume that the "land area" at issue here is the aggregate size of the 14 lots, which is approximately 4 acres.

and performance bond or other reasonable surety requirements for onsite timber operations and for protection of publicly and privately owned roads that are part of the haul route." (§ 4516.5, subd. (a), italics added.)

Even though section 4516.5, subdivision (a), contains a definition of "timber operations," subdivision (d) of that same section refers specifically to "timber operations, *as defined by this chapter* . . . ." (Italics added.) The phrase "as defined by this chapter" is superfluous unless it serves to substitute, for purposes of subdivision (d), the chapter's definition of "timber operations" for the section's definition of "timber operations." Thus, we conclude that the definition of "timber operations" contained in section 4527 (which we discuss in the text) is the appropriate definition for purposes of section 4516.5, subdivision (d).

Moreover, the resolution of this appeal does not turn on which definition applies to the phrase "timber operations" as it is used in subdivision (d) of section 4516.5. The section definition states that timber operations "includes, but is not limited to," the listed activities. (See § 4516.5, subd. (a).) We think that the section definition of "timber operations," which is not an exhaustive identification of activities, must include the most obvious timber activity, the cutting and removal of timber. As a consequence, regardless of which definition of "timber operations" applies to subdivision (d) of section 4516.5, any local ordinance that requires a permit before timber is cut or removed constitutes a permit requirement for "timber operations."

[5] "The California Timberland Productivity Act of 1982 . . . requires cities and counties to zone described timberlands as 'timberland production zones,' or TPZ's." (*Big Creek Lumber Co.* v. *County of San Mateo* (1995) 31 Cal.App.4th 418, 422 [37 Cal.Rptr.2d 159], fn. omitted (*Big Creek Lumber Co.*).) "TPZ land may be used *only* for growing and harvesting timber and compatible uses." (*Id.* at p. 425, fn.12, italics in original.)

Section 4516.5 is therefore applicable to the Property and preempts the permit requirement created by Humboldt County's zoning regulations.

The parties have expended considerable resources debating whether a permit was required here. In doing so, they have mistakenly focused on a decision of the First Appellate District which is not on point. In *Big Creek Lumber Co., supra,* 31 Cal.App.4th 418, the First Appellate District announced that "[w]ith its passage of the Z'berg-Nejedly Forest Practice Act of 1973 . . . the Legislature established a comprehensive statutory scheme regulating the *conduct* of timber operations. At issue here is whether the FPA preempts a county's attempt to control, by zoning ordinance, the *location* of commercial timber harvesting. We conclude the county's action was not preempted . . . ." (*Big Creek Lumber Co., supra,* at pp. 421-422, fn. omitted, italics in original.) Based on this language, the parties' arguments have focused on whether Humboldt County's permit requirement regulates the *conduct* of timber harvesting or the *location* of timber harvesting.

Despite the breadth of the language used in *Big Creek Lumber Co., supra,* 31 Cal.App.4th 418, that decision did not address, consider or resolve any issues related to local permitting requirements, because the county ordinance at issue in *Big Creek Lumber Co.* did not create a permit requirement. Instead, the ordinance in that case "prohibited, with certain exceptions, commercial timber harvesting in designated rural areas of the County 'within 1,000 feet of any legal dwelling in existence on June 18, 1991 . . . .' " (*Big Creek Lumber Co., supra,* 31 Cal.App.4th at p. 422.) Section 4516.5, subdivision (d), prohibits counties from enforcing two types of ordinances: (1) ordinances that "regulate the conduct of timber operations, as defined by this chapter" and (2) ordinances that "require the issuance of any permit or license for those operations." (§ 4516.5, subd. (d).) The *Big Creek Lumber Co.* decision draws a distinction between local attempts to regulate the *conduct* of timber operations, the first type of ordinance prohibited by section 4516.5, and local efforts to regulate the *location* of timber operations . . . . (31 Cal.App.4th at p. 424.) The *Big Creek Lumber Co.* decision concludes that the FPA does not preempt local efforts to regulate the *location* of timber harvesting. The conclusion of *Big Creek Lumber Co.* does not resolve the question of the validity of an ordinance, such as the one here, which requires a *permit,* the second type of ordinance prohibited by section 4516.5.

WCDC attempts to portray the permit requirement of Humboldt County as effectively the same as the ordinance at issue in *Big Creek Lumber Co., supra,* 31 Cal.App.4th 418. WCDC contends that each type of ordinance

operates to determine whether timber activities may occur in a particular location. The ordinance in *Big Creek Lumber Co.* achieved this result by describing areas within which timber harvesting operations could not occur. According to WCDC, Humboldt County achieves this result by denying permits to individuals who seek to harvest timber in areas which Humboldt County concludes, subject to the limits of state law, should not be used for timber harvesting.

WCDC overlooks critical differences in the two approaches. First, Humboldt County's zoning ordinances do not indicate when the county will deny a request for a conditional use permit even though timber harvesting is identified as a potential conditional use. Because the decision lies presumably within the undefined discretion of the county, its determination as to whether a permit will be granted cannot be predicted in advance. In contrast, the ordinance at issue in *Big Creek Lumber Co.* specifically prohibited timber harvesting in certain areas: " 'within 1,000 feet of any legal dwelling in existence on June 18, 1991 . . . .' " (*Big Creek Lumber Co., supra,* 31 Cal.App.4th at p. 422.) Such an ordinance does not add any unpredictability to the question of where timber harvesting will be permitted.

Second, a permit requirement creates delays which an ordinance that expressly prohibits timber harvesting in a defined area does not create. Lastly, if an individual is dissatisfied with a county's determination as to where timber harvesting may occur, the decision that individual must challenge will vary depending on the nature of the county's ordinance. If the ordinance prohibits timber harvesting in certain defined or described locations, a single interested party can challenge the ordinance and it will be stricken if it is " 'arbitrary and unreasonable and without substantial relation to public health, safety, or morals.' . . ." (*Big Creek Lumber Co., supra,* 31 Cal.App.4th at p. 428, citation omitted.) In contrast, under an ordinance which merely requires a permit but does not identify those locations for which the county will deny a request for a permit, the reviewable decision is the county's determination with respect to each individual permit application.

We draw these distinctions to refute WCDC's suggestion that an ordinance prohibiting timber activity in certain areas is equivalent to an ordinance requiring a permit. Because the two types of ordinances have significant differences, the *Big Creek Lumber Co., supra,* 31 Cal.App.4th 418 decision does not offer us any aid. Moreover, the plain language of section 4516.5 prohibits local attempts to impose permit or license requirements when the land area is three or more acres. We therefore affirm the trial court's decision that the FPA preempts Humboldt County zoning regulations

to the extent those regulations would have required Winkelhaus to obtain a conditional use permit prior to harvesting any timber.

B. *WCDC Does Not Offer an Adequate Basis for Concluding That Winkelhaus's Harvesting of Timber Violated the Local Coastal Program**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

III. DISPOSITION

We affirm.

Peterson, P. J., and Haning, J., concurred.

---

*See footnote, *ante*, page 365.