Filed 7/5/23  Rogers v. DGE Investments CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MICHELLE K. ROGERS, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> DGE INVESTMENTS, LLC, <br><br> Defendant and Respondent. | A165420 <br><br> (Napa County <br> Super. Ct. No. 19CV001610) |

Plaintiff and appellant Michelle K. Rogers (appellant) appeals from the trial court's grant of summary judgment in favor of defendant and respondent DGE Investments, LLC (respondent) in this employment action.  Appellant contends respondent retaliated against her for reporting that an employee she supervised was harassing female coworkers and physically abusing horses in respondent's trail riding business.  Appellant has not shown the trial court erred in concluding appellant failed to show there is a triable issue of fact as to whether respondent's reasons for the alleged adverse employment action were pretextual, and we affirm the grant of summary judgment.

PROCEDURAL BACKGROUND

In March 2020, appellant filed a First Amended Complaint (Complaint) against respondent, alleging nine causes of action for age discrimination,

1

retaliation in violation of both the Fair Employment and Housing Act (FEHA) and public policy, failure to prevent harassment, wrongful demotion, three wrongful termination claims, and a Labor Code discrimination claim.

In September 2021, respondent filed a motion for summary judgment. The trial court granted the motion in March 2022 and entered judgment in favor of respondent in April.

The present appeal followed.

## FACTUAL BACKGROUND[1]

Respondent operates a winery, trail riding, and horse boarding business in Napa, California. In March 2017, respondent hired appellant to manage the trail riding and horse boarding businesses. She managed seven employees in the trail barn; her direct supervisor was Alice Alkosser, one of respondent's owners.

In a declaration submitted in support of respondent's motion for summary judgment, Ms. Alkosser averred that problems with appellant's job performance "began to surface" during "the second-half of 2018." Ms. Alkosser learned that appellant had "frequent conflict" with a trail guide, Tristan Borge, who had been hired in April 2017. He approached Ms. Alkosser to complain about appellant in "mid to late 2018," but Ms. Alkosser told him he "needed to work things out with" appellant "unless he intended to make a formal complaint about her."

According to Ms. Alkosser's declaration, in September 2018, appellant terminated another trail guide, Whitney Milby, "without any advance warning" to any of respondent's managing officers "and without following proper termination procedures." On September 12, following the

---

[1] We summarize the factual background only as necessary to resolve the present appeal.

termination, Ms. Alkosser received an email from Ms. Milby, which was included in support of respondent's motion for summary judgment.  In the email, Ms. Milby expressed concerns about the health of various horses, about her understanding that the horses were not sufficiently examined prior to purchase, and about safety risks to guests and guides due to those issues.  Ms. Milby also complained that appellant "often brings her personal life to work with her which makes the atmosphere of the barn miserable."  Finally, Ms. Milby complained that appellant "does not respect her subordinate[s'] confidentiality."  Ms. Alkosser averred she spoke to appellant and "told her she did not have the authority to terminate employees without going through the proper steps, including getting authorization to terminate the employee. . . ."

On September 14, 2018, two days after receiving Ms. Milby's email, Ms. Alkosser received an email from appellant, which also was included in support of respondent's motion for summary judgment.  Appellant wrote, "With your permission, I would like to implement a change in the barn to keep drama away, quench gossiping, install better safety protocols, maintain better cleanliness and basic horse husbandry practices."  She acknowledged a previous "lack of supervision" but claimed she "had become more assertive this last month and I'm sure [the employees] have not enjoyed my check ins with micro management.  My perfectionist style and zero tolerance for unsafe practices, sloppy Horseman ship [sic], unsafe Horsemenship [sic], lazy behavior, and complaining has not won me manager of the year."  She also acknowledged, "I agree that I have in times been a part of the gossiping, the talking out of line, the occasional wrong way of addressing an issue that was taken wrong or out of context.  I will from here on out, not be their friend, but [their] supervisor who will demand great guest experiences, excellent safety

3

measures and zero drama tolerance. . . . I will act professional and manager worthy, enough to hopefully make you proud and respect me once again." The email ended with suggested policy changes to address "drama" ("no gossiping"), safety, and cleanliness. Ms. Alkosser averred that, after receiving the email, she "met with [appellant] and had a long coaching session with her to discuss the importance of maintaining a professional relationship with her subordinates and keeping personal matters out of the workplace."

Ms. Alkosser also averred that on September 23, 2018, she "learned that the family who had purchased a horse, [Jester], from [respondent] was very upset about [appellant's] conduct prior to sale."[2] The letter from the purchaser was included in support of respondent's motion for summary judgment. The letter alleged that appellant had concealed information from the buyer about Jester's medical condition (a back injury that may have caused seizures) and that two of respondent's former employees had alleged that appellant had kicked Jester. The letter requested a refund of 75% of the purchase price for the horse, and respondent agreed to "refund a portion" of the sales price.

On October 15, 2018, Ms. Alkosser received an email from appellant "complaining about interpersonal issues in the trail barn, among other things." The email was included in support of respondent's motion for summary judgment. In the email, appellant first updated Ms. Alkosser on medical issues involving several horses. She then said that another

---

[2] Ms. Alkosser's declaration refers to the horse as "Jasper," but the purchaser refers to "Jester." Ms. Milby's prior email also made reference to the "neurological problems" of a horse named "Jester." She wrote, "We were told he had a seizure which would be a very dangerous animal for a client to ride. Some of the guides felt unsafe and refused to ride him."

"wrangler," Karen Shaw, was upset with Mr. Borge because it "makes her uncomfortable when he starts to gossip and complain." Specifically, the email referenced Mr. Borge's complaint about medication given to a horse. Appellant also asserted in the email that Mr. Borge had "jerked" a horse's "bridal" [sic] and was "miss treating" [sic] another horse. Appellant's email commented, "[h]e has a very rough hand but has gotten much better when he's around me because he knows I won't tolerate it." The email continued, reporting that Ms. Shaw said she "may not be able to work with [Mr. Borge] because she feels that he is extremely toxic;" that he "fat shamed Allison on a regular basis, he did the same with Desiree" (presumably other employees); and that "as a coworker he is extremely difficult and is a bully." The email ended, "maybe you have some ideas on how to approach this with [Mr. Borge]."

In her declaration, Ms. Alkosser averred she was "disappointed that [appellant] was continuing to report 'drama' at the trail barn, because it seemed that she was not able to resolve that drama in a professional and competent manner." Ms. Alkosser also averred she was having "credibility concerns" with appellant, due to the situation with the purchase of Jester and her observation, "[w]hen I visited the barn personally, I didn't witness any of the drama or the issues [appellant] was reporting. I talked to one of the employees, Karen Shaw, who [appellant] had reported was 'very upset.' I asked Ms. Shaw if there was a problem going on between the trail guides, what was happening and why she was upset. Ms. Shaw told me she wasn't upset."

Later on October 15, 2018, Ms. Alkosser sent appellant an email stating, "I need to discuss this approach with you first. I was in the barn today with both wranglers and non[e] of what you're saying was

5

happening. . . . I am not available by phone this evening, but want to proceed as I have pointed out. Continue as originally planned & cut the drama." Ms. Alkosser averred, "it was clear to me that there were problems between [appellant] and at least one trail guide, and possibly between trail guides," "[b]ased on [appellant's] continued inability to resolve the 'drama' — coupled with conflicting explanations from witnesses about the root cause of the drama (i.e., Mr. Borge and Ms. Milby claimed [appellant] was the problem; [appellant] claimed Mr. Borge was the problem; [appellant] said Ms. Shaw was upset, but Ms. Shaw denied it) and my mounting uncertainty regarding [appellant's] credibility." Ms. Alkosser averred that she "decided [she] needed to investigate [appellant's] management of the trail barn and its employees more formally." She continued, "In order to investigate management of the barn, I decided to relocate [appellant] from the trail barn to the winery offices on a temporary basis and focus on her [horse boarding] barn responsibilities. There was a desk space in the Winery offices where [appellant] normally did paperwork and computer work that were part of her regular duties as equine manager where she could work temporarily. Having [appellant] in the office would allow me to conduct confidential interviews of the barn employees without interference by, or intimidation from, [appellant]."

Ms. Alkosser further averred that she met with appellant on October 16, 2018, "to discuss the terms of the investigation and [appellant's] modified working conditions during that investigation. . . . [Appellant's] salary was still the same; her benefits were the same; her title was the same; her commute and hours of work were the same. The only thing that changed . . . was that she was asked to focus on her [horse boarding] barn duties

6

while I assessed the management of the trail barn." At the meeting, "as soon as [appellant] learned that [respondent] was investigating her management — as opposed to investigating Tristan Borge — she became upset and quit on the spot."

Ms. Alkosser averred it was ultimately unnecessary to conduct any further investigation because "the barn immediately began running more smoothly" after appellant's departure. She also observed that, "If [appellant] had simply waited for [respondent] to complete the investigation I intended to conduct . . . she may well have been back to her regular duties within the week. I had not made any final decisions about her employment, I had not determined if any of her reports were true or untrue, and the reassignment of her duties was temporary."

Appellant submitted her own declaration in opposition to respondent's motion for summary judgment. She averred that Mr. Borge was " 'hard handed' (inhumane, whipping, kicking, pulling, yanking) with the horses from the beginning and was resistant to constructive criticism." She also averred that, starting in mid-2018, "he became more passive aggressive with the female staff, fat shaming, derogatory comments, commenting on their body parts, gossiping, challenging their sexual orientation, and bullying . . . on a weekly basis, etc." She averred that she shared "verbal and written reports with" Ms. Alkosser, although only the September 14, 2018 email was "produced in formal [d]iscovery."

Appellant further averred, "On October 15, 2018 I received a phone call from a barn employee named Karen Shaw. Ms. Shaw told me she did not want to work with Tristan again, that he was 'toxic' to staff and heavy handed with the horses. . . . Tristan was continuing to fat shame and generally harass and bully female staff, and Alice Alkosser removed me from

7

the trail barn and ordered me not to speak to any employees or go to the barn until we met the next morning." She continued, "I walked into the room and within 15 seconds (we never even sat down), Alice announced I was relieved of my assigned duties at both barns, save for collecting rents from boarders and entering payroll data from a desk in the winery building. I was not to go into the trail barn for any reason and not to speak to the employees."

Regarding the horse Jester, appellant averred his back became sore "[a]fter several weeks of riding, . . . which is not unusual for a horse not having been ridden in a long time. A veterinarian examined Jester and he was prescribed a common horse muscle relaxer for his tight muscles over his back. Within a week of rest and medication he was fine and ready to ride again." When respondent received the letter from the horse's buyer, no one questioned appellant's conduct around the sale of the horse.

Appellant averred she "was never once reprimanded orally or in writing by either of the owners." With respect to the termination of Ms. Milby, appellant averred she provided Ms. Milby "repeated verbal warnings" and notified Ms. Alkosser "of the warnings prior to Milby's termination." Ms. Milby's email to Ms. Alkosser was an uninformed complaint by a "disgruntled" former employee. Appellant averred she "was never written up or criticized for the termination [of] Whitney Milby, or for any performance while employed [by respondent]." Respondent did mention to her that Ms. Milby should have been given her final paycheck prior to termination.[3]

---

[3] Appellant's brief on appeal also cites to a portion of her amended response to respondent's statement of undisputed facts in which she describes an October 3, 2018 meeting between appellant, Ms. Alkosser, and another employee. However, the trial court excluded that evidence, and appellant has not shown the court abused its discretion. (See, *post*, at pp. 16-17.) Also, appellant fails to provide record citations to the actual evidence supporting the assertions in her response. (See *Tanguilig v. Valdez* (2019)

DISCUSSION

I.    *Governing Law and Standard of Review*

"[I]n order to establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action.  [Citations.]  Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action.  [Citation.]  If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation ' " 'drops out of the picture,' " ' and the burden shifts back to the employee to prove intentional retaliation."  (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*).)[4]

"The plaintiff must ' " 'offer substantial evidence that the employer's stated [nonretaliatory] reason for the adverse action was untrue or pretextual . . .' "  [Citation.]  An employee in this situation can not "simply show the employer's decision was wrong, mistaken, or unwise.  Rather, the employee ' "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' [citation], and hence infer 'that the employer did not act for the [...asserted] non-[retaliatory] reasons.' " ' " ' "  (*Batarse v. Serv. Emps. Internat. Union, Loc. 1000* (2012) 209 Cal.App.4th

_____

36 Cal.App.5th 514, 520.)  Therefore, that alleged evidence is not properly before this court.

[4] We focus on the FEHA retaliation claim because appellant has not articulated a basis to reverse dismissal of any of her other claims.  (See *post,* at p. 16, fn. 11.)

9

820, 834.)  " 'Pretext may be demonstrated by showing ". . . that the proffered reason had no basis in fact, the proffered reason did not actually motivate the [adverse employment action], or, the proffered reason was insufficient to motivate [the adverse employment action].  [Citation.]" [Citation.]' " (*California Fair Emp. & Hous. Com. v. Gemini Aluminum Corp.* (2004) 122 Cal.App.4th 1004, 1023.)  " 'Pretext may also be inferred from the timing of the company's termination decision, by the identity of the person making the decision, and by the terminated employee's job performance before termination.' " (*Ibid.*)

"Summary judgment is properly granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law.  [Citation.]  A defendant seeking summary judgment bears the initial burden of proving the 'cause of action has no merit' by showing that one or more elements of plaintiff's cause of action cannot be established or there is a complete defense.  [Citations.]  Once the defendant's burden is met, the burden shifts to the plaintiff to show that a triable issue of fact exists as to that cause of action." (*Spitzer v. The Good Guys, Inc.* (2000) 80 Cal.App.4th 1376, 1385.)  "[A]n issue of fact can only be created by a conflict of evidence.  It is not created by speculation or conjecture." (*Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 807.)

" ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' [Citation.]  We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Yanowitz, supra,* 36 Cal.4th at p. 1037.)

10

II.    *Analysis*

In granting summary judgment, the trial court found that, assuming appellant made a protected complaint, she "fail[ed] to set forth any fact tending to show that [respondent] understood it as such and/or that its decision to reassign her was motivated by reporting." The court concluded, "because [appellant] fails to set forth facts, supported by evidence, tending to show either that [respondent's] purported reasons for reassigning her were pretextual or that [respondent] harbored any discriminatory animus toward [appellant], she fails to make the showing required to defeat [respondent's] motion for summary judgment."

For purposes of appeal, we assume there are triable issues of fact as to the elements of appellant's prima facie case: appellant's October 15, 2018 email was a protected complaint about harassment and animal abuse; respondent subjected appellant to an adverse employment action by reassigning her duties following receipt of the email; and a causal link existed between appellant's protected complaint and the reassignment.[5] Further, there is no dispute that respondent has offered legitimate, nonretaliatory reasons for the alleged adverse employment action. We focus, therefore, on whether the trial court erred in concluding appellant failed to show there is a triable issue whether respondent's reasons were pretextual.[6]

---

[5] Appellant claims she complained about Mr. Borge on prior occasions before October 15, 2018, but the only arguably protected complaint in evidence is the October 15 email.

[6] We need not and do not address respondent's contentions that there also are no triable issues as to whether appellant made a protected complaint, was wrongfully discharged, or suffered an adverse employment action.

11

Appellant argues the trial court erred because "pretext may be inferred [from] evidence that (1) the demotion occurred a mere day after [appellant's] latest complaint to Ms. Alkosser regarding Mr. Borge's conduct; (2) [appellant's] personnel file did not show any history of admonishment or discipline; (3) there is no indication that [appellant] was approached with any performance deficiencies prior to the instant litigation; (4) [respondent] failed to investigate [appellant's] workplace complaints; and, (5) the inconsistencies and contradictions in the stated justifications for the adverse action undermine [respondent's] proffered reasons . . . ." Appellant's arguments fail.

First, appellant points to the circumstances that the reassignment of duties occurred the day after she sent the October 15, 2018 email. But Ms. Alkosser explained that the October 15 email was the impetus for her visit to the trail barn the same day and her subsequent decision to reassign appellant to permit an opportunity for a full investigation of appellant's management. She averred she was concerned about the continued "drama" in the trail barn and about her inability to immediately confirm appellant's assertions in the email. Given that explanation, it made sense the reassignment of duties would be close in time to receipt of the email, so the proximity does not give rise to an inference of pretext.

Appellant's second and third points are based on appellant's employment record with respondent. Regardless of whether appellant's "personnel file" showed a history of "admonishment or discipline," there was ample evidence in the record that Ms. Alkosser expressed concern to

appellant about the "drama" at the trail barn.[7]  Ms. Alkosser averred she spoke to appellant regarding the proper procedures for termination following Ms. Milby's termination; more substantially, Ms. Alkosser averred that, after receiving a September 14, 2018 email from appellant, she had a "long coaching session with [appellant] to discuss the importance of maintaining a professional relationship with her subordinates and keeping personal matters out of the workplace."  And the September 14 email itself corroborated that there had been concerns expressed about appellant's management abilities.  Among other things, appellant acknowledged, "I agree that I have in times been a part of the gossiping, the talking out of line, the occasional wrong way of addressing an issue that was taken wrong or out of context.  I will from here on out not be their friend, but [their] supervisor who will demand great guest experiences, excellent safety measures and zero drama tolerance. . . .  I will act professional and manager worthy, enough to hopefully make you proud and respect me once again."  Thus, appellant's employment record does not give rise to an inference of pretext.

Fourth, appellant argues respondent failed to investigate her workplace complaints.  In fact, Ms. Alkosser averred she conducted a preliminary investigation on October 15, 2018 that failed to confirm appellant's assertions; she intended to conduct a more thorough investigation, but the problems at the barn went away after appellant's departure.  Furthermore, Ms. Alkosser testified in her deposition that she did not understand appellant to be reporting unlawful conduct by Mr. Borge.  We have assumed appellant's email could be considered protected conduct for the

---

[7] Appellant cites no authority that employment history must appear in a "personnel file" or constitute "admonishment or discipline" in order to be considered as evidence justifying an employer's action.

13

purposes of her FEHA claim, but the October 15 email's references to "fat sham[ing]" and a "very rough hand" with horses were not clear allegations of sexual harassment or illegal animal cruelty.[8] If the email had presented clearer or more substantial claims of illegal conduct, the failure to investigate even after appellant's departure might raise some questions about respondent's actual motivations. But, in light of the ambiguous nature of the allegations and the results of Ms. Alkosser's initial investigation, respondent's failure to investigate further does not give rise to an inference of pretext.

Finally, appellant argues "inconsistencies and contradictions in [respondent's] stated justifications" demonstrate pretext. For the most part, appellant does not actually point to inconsistencies or contradictions; instead, appellant points to evidence raising questions about the underlying merits of the allegations against appellant. For example, appellant argues respondent "did not produce any expert opinion to support a claim that [appellant] had concealed any information or condition of Jester." But Ms. Alkosser did not aver she reassigned appellant because appellant actually did all that she was accused of. Instead, Ms. Alkosser averred that the various incidents made her concerned about appellant's credibility and management, requiring additional investigation. Accordingly, evidence the allegations against appellant were untrue does not give rise to an inference of pretext. To the extent appellant does identify arguable inconsistencies—for example,

---

[8] We agree with the trial court's characterization of the email on this issue: "It is far from clear to the Court that, objectively speaking, any of the statements in [the] October 15, 2018 email could be construed as reporting illegal, as opposed to potentially offensive or even odious, behavior. There is no discussion, explanation or argument. . . that might suggest that the complaints regarding [Mr. Borge's] treatment of horses rose to the level of illegality."

whether the problem with Ms. Milby's termination was a failure to follow proper procedures or the termination itself—they are not significant enough to amount to meaningful evidence of pretext.

Several additional factors also weigh against a finding of pretext. First, the evidence Ms. Alkosser had good reason to investigate appellant's management was relatively strong. Although there are disputed facts as to what really was happening at the barn and what really happened during the sale of Jester, it is undisputed that a number of incidents raising questions about appellant's management and credibility occurred during a short period of time. Second, the evidence respondent had any reason to retaliate against appellant was relatively weak. Appellant's allegations about Mr. Borge were not particularly dramatic, the allegations were mixed together with a range of other complaints about his performance, and the allegations did not involve anyone in management.[9] Finally, respondent's alleged adverse action was relatively modest. Although the duration of the investigation was unspecified, it is undisputed Ms. Alkosser told appellant she was reassigned so that Ms. Alkosser could conduct an investigation of appellant's management of the trail barn. Although appellant disputes the justification

---

[9] Appellant asserts Mr. Borge's parents were "friends" with Alice and David Alkosser. The evidence she cites to support that assertion is her own declaration that does not disclose any personal knowledge and a statement from Mr. Borge's deposition that his parents and the Alkossers "run in kind of the same circle." That evidence does not permit an inference that the relationship was such as to cause respondent to retaliate against appellant for reporting Mr. Borge's misbehavior.

and motivation for the action, there is no evidence the alleged adverse action was anything other than a temporary reassignment.[10]

Resolving doubts concerning the evidence in favor of appellant, the record demonstrates that respondent had substantial reasons to investigate appellant's management, had little reason to retaliate against appellant due to any protected complaints, and implemented only a modest adverse action against appellant. Given the absence of significant evidence supporting an inference respondent's reasons were pretextual, the trial court properly concluded there was no triable issue of fact as to whether respondent's nonretaliatory reasons for its actions were pretextual.[11]

III.    *Appellant's Evidentiary Contentions*

In her opening brief, appellant argued that the trial court erred in finding certain exhibits attached to her opposition to the motion for summary judgment were not properly authenticated, that the court abused its discretion in refusing to consider an amended declaration, and that certain emails did not require authentication by declaration. Respondent persuasively addressed those arguments in detail in its brief, but appellant

---

[10] Appellant sometimes refers to the reassignment as a "demotion," but she cites no evidence the reassignment was permanent or that it involved any change in title or salary.

[11] In her opening brief, appellant also argued the trial court erred in "relying on the primary rights doctrine" in granting summary judgment as to *all* her causes of action. Appellant objects to the court's reference to the "primary right underlying" the complaint and the court's comment, "[a]lthough [appellant] purports to assert nine causes of action, a review of the [c]omplaint leads to the conclusion that each is simply a variation on the same fundamental claim: disparate treatment discrimination in employment." But appellant's reply fails to address the arguments in respondent's brief, and appellant has not shown the trial court erred in finding there was no triable issue of fact as to any other specific cause of action. The argument merits no further discussion.

16

failed to address the issue in her reply. We will not endeavor to respond to respondent's arguments on appellant's behalf. (See *LAOSD Asbestos Cases* (2023) 87 Cal.App.5th 939, 954; *Burchett v. City of Newport Beach* (1995) 33 Cal.App.4th 1472, 1481.) Suffice it to say appellant has failed to demonstrate that the court erred or that any error was prejudicial. On the prejudice issue, we observe that the excluded evidence referenced by appellant on appeal was relevant only to support arguments already rejected elsewhere in this decision.

Appellant also argued in her opening brief that the trial court erred in "disregarding" objections to Ms. Alkosser's declaration. Again, appellant failed to address respondent's persuasive arguments in her reply brief. Appellant has failed to show her hearsay objections had merit, because the challenged statements were admitted to support the proposition that Ms. Alkosser had reason to investigate appellant's management of the barn, *not* for the truth of the matters asserted. (See *People v. Montes* (2014) 58 Cal.4th 809, 863.) And appellant makes no showing of prejudice as to the other portions of the declaration to which she objected.

## DISPOSITION

The trial court's judgment is affirmed. Costs on appeal are awarded to respondent.

                                        _____
                                        SIMONS, Acting P. J.

We concur.

_____
BURNS, J.

_____
LANGHORNE, J.*

(A165420)

_____

    * Judge of the Napa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18